446 April 18, 2013 No. 17

IN THE SUPREME COURT OF THE
STATE OF OREGON

In the Matter of the Marriage of

Lisa MATAR,
*Respondent on Review*,
*and*

STATE OF OREGON,
*Petitioner below*,
*and*

Azzam HARAKE,
*Petitioner on Review*.

(CC C032405DRC; CA A143331; SC S060064)

En Banc

On review from the Court of Appeals.*

Argued and submitted November 8, 2012; resubmitted January 7, 2013.

Daniel S. Margolin, Stephens Margolin PC, Portland, argued the cause and filed the brief for petitioner on review.

Helen C. Tompkins, Portland, argued the cause and filed the brief for respondent on review.

WALTERS, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

* Appeal from Washington County Circuit Court, Keith R. Raines, Judge. 246 Or App 317, 270 P3d 257 (2011).

**WALTERS, J.**

In this domestic relations case, we decide that, pursuant to ORS 107.104[1] and ORS 107.135(15),[2] a court may enforce an agreement between parents not to seek modification of the child support terms of a stipulated judgment of dissolution unless to do so would violate the law or contravene public policy. We also decide that, in this case, father did not demonstrate that enforcement of his nonmodification agreement with mother violated the law or contravened public policy. Consequently, we affirm the decision of the Court of Appeals and the judgment of the circuit court. *Matar and Harake*, 246 Or App 317, 270 P3d 257 (2011).

## I.  FACTS AND PROCEDURAL HISTORY

The relevant facts are undisputed and are taken from the record. In February 2005, the parties stipulated to a judgment dissolving their marriage. At that time, the parties had been married for seven years and had two minor children, then ages four and six. The judgment provided that the parties would have joint legal custody of their children, with mother having primary physical custody and father having reasonable parenting time. It also required that father pay child support of $1,750 per month, which exceeded by $8 the presumptively correct amount indicated by application of the Oregon Child Support Guidelines Formula (Child Support Formula).[3] The judgment provided

---

[1] ORS 107.104(1) provides:

"It is the policy of this state:

"(a) To encourage the settlement of suits for marital annulment, dissolution or separation; and

"(b) For courts to enforce the terms of settlements described in subsection (2) of this section to the fullest extent possible, except when to do so would violate the law or would clearly contravene public policy."

[2] ORS 107.135(15) provides, in part:

"(a) It is the policy of this state:

"(A) To encourage the settlement of cases brought under this section; and

"(B) For courts to enforce the terms of settlements described in paragraph (b) of this subsection to the fullest extent possible, except when to do so would violate the law or would clearly contravene public policy."

[3] Oregon law requires that the Division of Child Support of the Department of Justice establish a formula that courts and agencies must use in determining

that neither party would seek modification of that support obligation:

> "This agreement has been made with the understanding that child support will not be reduced and shall continue to be paid until the children are 21 years old. The parties stipulate that neither will seek a support modification due to income changes of the parties, nor due to a change of circumstances. For example, the child support amount will remain consistent even if Father has the children 50% of the time. This is a deviated support arrangement and came about due to the position of this case and the original decree's order of judgment."

The judgment further provided that "[n]either party shall be awarded or pay spousal support because of the child support agreement reached by the parties" and that "[t]he parties have reached complete agreement on the terms of their dissolution with regard to marital assets and debts, custody, parenting time, and child support as set forth herein." Both parties were represented by counsel, and father did not object to or appeal the entry of the stipulated judgment at the time.

In 2009, father filed a motion to require mother to appear and show cause why father's child support obligation should not be reduced based on an alleged reduction in his monthly income from $7,300 to $6,200 and his support of two additional children.[4] Mother filed a response and pleaded an affirmative defense of waiver, attaching and incorporating by reference a copy of the parties' stipulated judgment. Mother also filed a motion to dismiss and asserted that father's agreement not to seek a reduction in child support

---

child support awards. That formula, which we will refer to as the "Child Support Formula," is contained in OAR 137-050-0700 through OAR 137-050-0765.

[4] In his affidavit in support of his motion to show cause, father also asserted that he had agreed to pay more child support than the presumptively correct amount "in exchange for *** being allowed joint custody of the children" and that "[mother] recently modified the custody arrangement and has been awarded sole legal custody." In the legal memorandum that father filed thereafter, father did not make any argument pertaining to the change in custody. Father also did not mention that issue at the hearings that the trial court subsequently conducted. The trial court found that a substantial change in circumstances had occurred based only on father's reduction in income. Father did not make any arguments relating to the change in custody on appeal to the Court of Appeals or on review to this court.

due to a change in his income barred father from seeking modification of the stipulated child support award.

The parties agreed that the court should decide, as a preliminary matter, the legal issue raised by mother's motion to dismiss, and both parties filed memoranda in support of their positions. Father argued that (1) "child support is a right of the child not of the parents, and there is a strong public policy against parties contracting around the [Child Support Formula]"; (2) the terms of marital settlement agreements may not deprive a court of its authority to modify child support due to a substantial change in circumstances; and (3) because father had demonstrated a substantial change in circumstances, enforcement of the nonmodification provision violated public policy and was unenforceable.

At a hearing on mother's motion, the trial court indicated that it intended to grant the motion but, understanding that father was considering an appeal, scheduled a second hearing and asked that the parties present the evidence that they would have presented had mother not sought dismissal of the proceeding. At the conclusion of that second hearing, the court entered a Supplemental Judgment of Dismissal and, as requested by mother, made specific Findings of Fact and Conclusions of Law. The court found that father had shown a substantial change in circumstances through reduction in his income but that he had entered into a nonmodification agreement that neither divested the court of jurisdiction nor violated public policy. Therefore, the court concluded, the parties' nonmodification agreement was enforceable, and father's motion for modification should be dismissed.

As the trial court anticipated, father appealed. In the Court of Appeals, father argued that the parties' nonmodification agreement was necessarily contrary to public policy, because it prevented the court from ensuring that father's child support obligation conformed with the Child Support Formula and, in doing so, divested the court of its role in protecting children. Father also asserted that the legislature could not have intended that ORS 107.104 and ORS 107.135(15) apply to provisions of marital

settlement agreements pertaining to child support and that the trial court had erred in dismissing father's motion for modification.

The Court of Appeals affirmed the judgment of the trial court. *Matar*, 246 Or App at 319. The court reasoned that ORS 107.104(1) and ORS 107.135(15)(a) create a presumption in favor of enforcing stipulated agreements resolving suits for marital dissolution, annulment, and separation—a presumption that applies to the child support terms in those agreements. *Id*. at 320. An agreement that purported to divest the court of authority to modify child support would not be enforceable. However, the court held, Oregon law does not prohibit parties from waiving the right to seek modification of child support; such agreements are enforceable unless they violate the law or contravene public policy. *Id*. at 322. In this case, the court concluded, the parties' agreement did not do so, and the trial court did not err. *Id*. at 323. We allowed father's petition for review to consider the relationship between two sets of statutes: (1) those that impose child support obligations and establish procedures and standards for determining and modifying child support; and (2) those that provide for judicial enforcement of the terms of marital settlement agreements.

Before this court, father essentially renews his previous arguments. First, he argues that the legislature did not intend the statutes that provide for judicial enforcement of martial settlement agreements (ORS 107.104 and ORS 107.135(15)) to apply to terms in those agreements pertaining to child support. Second, he argues that, even if those statutes do apply to such terms, agreements not to modify child support are *necessarily* unenforceable as contrary to public policy, "regardless of the specifics of each factual scenario."[5] Father suggests that such nonmodification provisions violate public policy both because they "interfere with the courts' and the [s]tate's ability to make child support determinations in the best interest of particular children" and because they prevent parents from seeking to modify child support based on unanticipated changes

---

[5] Father argues that nonmodification provisions necessarily contravene public policy. He does not argue that nonmodification provisions necessarily violate specific provisions of Oregon law.

in circumstances. For her part, mother argues that ORS 107.104 and ORS 107.135(15) are applicable to all terms in marital settlement agreements, including terms pertaining to child support, and that parents' agreements to waive their rights to seek modification of child support are enforceable unless, in a particular case, enforcement would violate the law or contravene public policy. Mother argues that, in this case, enforcement of the parties' nonmodification provision did not contravene public policy.[6]

We begin our analysis by reviewing the applicable sets of Oregon statutes—those that require parents to support their children and those that make parents' marital settlement agreements enforceable.

## II.   PARENTS' CHILD SUPPORT OBLIGATIONS

Parents have a legal duty to support their children. ORS 109.010 ("Parents are bound to maintain their children who are poor and unable to work to maintain themselves; and children are bound to maintain their parents in like circumstances."); ORS 109.015 ("It is the public policy of this state that dependent children shall be maintained, as much as possible, from the resources of both parents * * *."); *Haxton and Haxton*, 299 Or 616, 632, 705 P2d 721 (1985) (statutory duty of parental support exists and may be enforced in a direct action by a child against a parent). Parents cannot, by contract, avoid that obligation. *See Jackman v. Short*, 165 Or 626, 109 P2d 860 (1941) (court modified divorce decree to require payment of child support even though original divorce decree was silent); *Gibbons v. Gibbons*, 75 Or 500, 503, 147 P 530 (1915) (because "[t]he welfare of these infants is paramount to the rights of any other person[,]" an agreement that makes no provision for the care of the children cannot be binding when it deprives the children of their right to maintenance). In *Hess v. Hess*, 115 Or 595, 239 P 124 (1925), the court explained:

> "The stipulation did not bind the mother to exclusively support the child, but if it had, it would not have been binding upon the child or those having the custody of it, for the obligation of a parent to support a dependent child is one imposed by law and arises from the relationship

---

[6] Mother also makes various preservation arguments, which we reject.

of the parties and the requirements of the child, and this responsibility neither parent can shirk."

*Id.* at 598-99.

The Oregon legislature has enacted various statutes that, taken together, protect a child's right to parental support. First, the statute that governs suits for dissolution, annulment, or separation authorizes courts to enter child support awards in such proceedings. ORS 107.105(1)(c). ORS 107.106(b) recognizes that those awards "are designed for the child's benefit and not the parents' benefit" and requires that judgments entered in such proceedings include a statement so informing parents.

Second, other statutes give children and the state independent rights to seek or enforce child support awards. ORS 109.100 allows a child to seek an award of child support by filing his or her own petition for support. ORS 107.108 makes a "child attending school" a party to proceedings between parents and creates safeguards to ensure that the child benefits from orders intended to provide support or maintenance.[7] ORS 25.080(4) authorizes the Department of Justice to establish and enforce child support obligations and to initiate and respond to child support modification proceedings when support is assigned to or provided by the state.[8]

---

[7] ORS 107.108 provides, in part:

"(3) *** [A] child attending school is a party to any legal proceeding related to the support order. A child attending school may:

"* * * * *

"(b) Request a judicial or administrative modification of the child support amount or may receive notice of and participate in any modification proceeding[.]

"* * * * *

"(5)(a) If a support order provides for the support or maintenance of a child attending school and the child qualifies as a child attending school, unless good cause is found for the distribution of the payment to be made in some other manner, support shall be distributed to the child if services are being provided under ORS 25.080 or shall be paid directly to the child if those services are not being provided."

[8] ORS 25.080(4) provides, in part:

"When responsible for providing support enforcement services and there is sufficient evidence available to support the action to be taken, [the Division of Child Support of the Department of Justice]:

Third, in accordance with federal law, courts and agencies are required to use the Child Support Formula in determining the amount of any child support award. ORS 25.270;[9] ORS 25.280.[10] The Child Support Formula is designed to generate an amount of child support that is presumptively correct, considering both the financial situation of the parents and the needs of the child for whom the support is being sought. ORS 25.275.[11] A support award determined pursuant to the Child Support Formula is

"(a) Shall establish and enforce any child support obligation;

"* * * * *

"(e) Shall, on behalf of the state, initiate and respond to child support modification proceedings based upon a substantial change of circumstances;

"(f) Shall, on behalf of the state, initiate and respond to child support modification proceedings based upon a modification conducted under ORS 25.287 concerning existing child support orders[.]"

[9] ORS 25.270 provides, in part:

"(1) The federal Family Support Act of 1988 mandates that the state must establish a formula for child support award amounts that is applicable in any judicial or administrative proceeding for the award of child support.

"(2) It is further mandated that the amount of child support determined by the formula must be presumed to be the correct amount unless rebutted by a specific finding on the record that the application of the formula would be unjust or inappropriate in the particular case as determined under criteria established by the state.

"* * * * *

"(5) The Division of Child Support of the Department of Justice is the appropriate agency to establish the required formula."

[10] ORS 25.280 provides, in part:

"In any judicial or administrative proceeding for the establishment or modification of a child support obligation * * * the amount of support determined by the formula established under ORS 25.275 is presumed to be the correct amount of the obligation. This is a rebuttable presumption and a written finding or a specific finding on the record that the application of the formula would be unjust or inappropriate in a particular case is sufficient to rebut the presumption."

[11] ORS 25.275(1) provides:

"The Division of Child Support of the Department of Justice shall establish by rule a formula for determining child support awards in any judicial or administrative proceeding. In establishing the formula, the division shall take into consideration the following criteria:

"(a) All earnings, income and resources of each parent, including real and personal property;

"(b) The earnings history and potential of each parent;

"(c) The reasonable necessities of each parent;

"(d) The ability of each parent to borrow;

"presumed to be \* \* \* correct"; it may, however, be rebutted if a court or agency makes specific written findings that the application of the formula would be "unjust" or "inappropriate" in a particular case. ORS 25.280.

Recognizing that parents' ability to support their children may change over time, Oregon law also provides for the modification of child support awards. ORS 107.135(3)(a) authorizes a parent to seek modification of child support and specifies that a "substantial change in economic circumstances of a party" is "sufficient for the court to reconsider its order of support[.]"[12] ORS 109.100 anticipates that a child may bring an independent petition to modify child support.[13] When the state is responsible for child support enforcement, ORS 25.287(1) authorizes it to seek modification to ensure that the support award is in substantial compliance with the Child Support Formula. The state cannot seek such modification more often than every three years "or such shorter cycle as determined by rule of the Department of Justice[.]" ORS 25.287(1)(b). When a party seeks modification, the court or agency must apply the Child Support Formula and rebuttal factors in setting the amount of support. That is true whether the modification proceeding is initiated by a parent, a child, or the state. ORS 25.270; ORS 25.280.

---

"(e) The educational, physical and emotional needs of the child for whom the support is sought;

"(f) The amount of assistance that would be paid to the child under the full standard of need of the state's IV-A plan;

"(g) Preexisting support orders and current dependents; and

"(h) Other reasonable criteria that the division may find to be appropriate."

[12] That statute codified this court's holding that a party seeking modification must demonstrate a substantial change in circumstances and that parties are otherwise precluded from relitigating settled matters. *McDonnal and McDonnal*, 293 Or 772, 783, 652 P2d 1247 (1982).

[13] ORS 109.100 provides, in part:

"(1) Any minor child \* \* \* may \* \* \* apply \* \* \* for an order upon the child's father or mother, or both, to provide for the child's support.

"\* \* \* \* \*

"(4) The judgment of a court under subsection (1) of this section is final as to any installment or payment of money that has accrued up to the time either party makes a motion to set aside, alter or modify the judgment \* \* \*."

## III. ENFORCEMENT OF PARENTS' SETTLEMENT AGREEMENTS

The second set of statutes relevant to the issue before us are those that permit the enforcement of parents' settlement agreements. In 2001, the legislature enacted ORS 107.104, which announces a policy of encouraging settlement agreements in suits for martial annulment, dissolution, or separation and provides for the enforcement of settlement terms. ORS 107.104 provides:

"(1)  It is the policy of this state:

"(a)  To encourage the settlement of suits for marital annulment, dissolution or separation; and

"(b)  For courts to enforce the terms of settlements described in subsection (2) of this section to the fullest extent possible, except when to do so would violate the law or would clearly contravene public policy."

That statute further provides that a court may enforce settlement terms using contractual remedies as well as any other remedies available to enforce a judgment, including but not limited to contempt.[14] ORS 107.104(2).[15] ORS 107.135(15)(a) is analogous: It provides for the enforcement of settlement agreements in modification proceedings and authorizes the use of contractual and other remedies, except when enforcement would violate the law or contravene public policy.[16]

---

[14] In permitting parties to bring enforcement actions using contractual remedies as well as any other remedies available to enforce a judgment, ORS 107.104 and ORS 107.135(15) overturned *Webber v. Olsen*, 330 Or 189, 998 P2d 666 (2000), in which the court had declined to enforce as a contract an agreement included in a stipulated judgment of dissolution.

[15] ORS 107.104(2) provides:

"In a suit for marital annulment, dissolution or separation, the court may enforce the terms set forth in a stipulated judgment signed by the parties, a judgment resulting from a settlement on the record or a judgment incorporating a marital settlement agreement:

"(a)  As contract terms using contract remedies;

"(b)  By imposing any remedy available to enforce a judgment, including but not limited to contempt; or

"(c)  By any combination of the provisions of paragraphs (a) and (b) of this subsection."

[16] ORS 107.135(15) provides, in part:

"(a)  It is the policy of this state:

Both statutes are consistent with this court's decision in *McDonnal and McDonnal*, 293 Or 772, 778, 652 P2d 1247 (1982). In that case, the court observed that, in enacting statutes permitting dissolution of marriage without demonstration of fault, the legislature had sought in part to avoid unnecessary litigation and use of judicial resources and to encourage parties to settle their disputes more amicably. *Id*. at 778. Those objectives, the court explained, "are most effectively advanced when proposed property and support agreements are accepted by the court and incorporated into the dissolution decree."[17] *Id*. at 779. Furthermore, the court suggested, marital agreements should be enforced for many of the same reasons that courts enforce private contracts generally:

> "It is axiomatic that public policy requires that persons of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred and shall be enforced by courts of justice; and it is only when some other overpowering rule of public policy intervenes, rendering such agreements unfair or illegal, that they will not be enforced."

*Id*. at 779 (internal citations and quotation marks omitted). Where an agreement has been incorporated into a decree,

---

"(A) To encourage the settlement of cases brought under this section; and

"(B) For courts to enforce the terms of settlements described in paragraph (b) of this subsection to the fullest extent possible, except when to do so would violate the law or would clearly contravene public policy.

"(b) In a proceeding under subsection (1) of this section, the court may enforce the terms set forth in a stipulated order or judgment signed by the parties, an order or judgment resulting from a settlement on the record or an order or judgment incorporating a settlement agreement:

"(A) As contract terms using contract remedies;

"(B) By imposing any remedy available to enforce an order or judgment, including but not limited to contempt; or

"(C) By any combination of the provisions of subparagraphs (A) and (B) of this paragraph."

[17] The passage of no-fault divorce laws and the increased respect for private agreements generally was part of a growing national recognition that people should have greater autonomy in organizing their domestic relationships. *See* Jana B. Singer, *The Privatization of Family Law*, 1992 Wis L Rev 1443, 1509 (documenting the shift from marriage-as-status to marriage-as-contract and the rise of private decision making in family law, and suggesting that these shifts were connected to changing notions of individual privacy and decisional autonomy).

the agreement itself is a measure of the equities between the parties, and where parties have foregone their opportunity to litigate and have chosen instead to enter into an agreement, "their reliance on [that] agreement can be presumed." *Id*. at 779. With those considerations in mind, "[t]he parties' own resolution of their dispute should be accorded great weight," and the court has a "responsibility to discover and give effect to the intent of the parties as reflected in the incorporated settlement agreement." *Id*. As a result, the court concluded that martial dissolution agreements, "[o]nce approved by the court and incorporated into the decree[,] * * * are to be enforced as a matter of public policy." *Id*.

## IV.  ANALYSIS

Having described the applicable statutes, we return to the parties' arguments about the interrelationship of those statutes and the policies that they embody. We begin with father's argument that the legislature did not intend ORS 107.104 and ORS 107.135(15) to apply to the child support terms of marital settlement agreements. To analyze that argument, we look first to the text and context of those statutes. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) (stating analysis).

ORS 107.104 provides for judicial enforcement of the "terms" of stipulated judgments in suits for marital annulment, dissolution, or separation. Pursuant to ORS 107.105(1)(c), such terms may include those that provide "[f]or the support of the children of the marriage." Similarly, ORS 107.135(15)(a) provides for enforcement of "terms" of stipulated orders or judgments reached in proceedings to set aside, alter, or modify judgments of annulment, dissolution, or separation. Pursuant to ORS 107.135(1), such proceedings may include the modification of any portion of a judgment that provides for "support and welfare of the minor children." ORS 107.135(1)(a).[18] Thus, the text and context of both ORS 107.104 and ORS 107.135(15) reflect

---

[18] ORS 107.135(15)(a) declares that it is the policy of the state for courts to enforce the terms of settlements described in ORS 107.135(15)(b). ORS 107.135(15)(b) authorizes courts to enforce the terms of settlement agreements reached in proceedings under ORS 107.135(1). That statute provides, in part:

"(1) The court may at any time after a judgment of annulment or dissolution of marriage or of separation is granted * * * :

a legislative intent to make those provisions applicable to terms of marital settlement agreements pertaining to child support.

Father nevertheless argues that the public policies reflected in the statutes that authorize courts to make and modify child support awards demonstrate that the legislature did not intend for ORS 107.104 or ORS 107.135(15) to apply to terms of marital settlement agreements pertaining to child support. We disagree. In our view, those statutes anticipate the very issue that father raises: They provide that courts should enforce marital settlement agreements "to the fullest extent possible, *except* when to do so would violate the law or would clearly contravene public policy." (Emphasis added.) The legislature clearly understood and provided that, in the event of a conflict between the enforcement statutes and the public policies evident in other statutes, the enforcement statutes must yield. By broadly instructing courts to enforce the "terms" of marital settlement agreements subject to certain exceptions, the legislature expressed its intent to make that instruction applicable to *all* of the terms of such agreements, except those falling within the specified exceptions.[19]

We proceed, therefore, to father's argument that agreements not to seek modification of child support always fall within the statutory exception because the enforcement of such agreements necessarily contravenes public policy. Father contends that that is so because nonmodification agreements interfere with the court's ability to make child

---

"(a)  Set aside, alter or modify any portion of the judgment that provides for the *** support and welfare of the minor children and the children attending school ***."

[19] Father also proffers legislative history in support of his argument. We do not find that material—an excerpt from the legislative discussion of House Bill (HB) 2494 (ultimately enacted as ORS 107.104 and ORS 107.135(15)) in which Representative Charlie Ringo stated that the bill would not affect "the ability to modify support or to enforce payment of child support"—to be helpful. Representative Ringo appears to have made that statement in response to a question concerning the reach of *Webber v. Olsen*, 330 Or 189, 998 P2d 666 (2000), the case that the legislature intended to overturn in enacting ORS 107.104 and ORS 107.135(15). Rather than suggesting that HB 2494 would not reach child support obligations, Representative Ringo seems to have been clarifying that the contractual remedies that the legislature intended to authorize would not affect parents' ability to seek modification or enforcement of child support obligations through traditional judicial remedies.

support determinations based on children's best interests and because such agreements prevent parents from pursuing their right to seek child support modification based on changes in circumstances. It appears that father is making two interrelated points, although he does not clearly distinguish between them: First, enforcement of parents' nonmodification agreements would deprive the court of its statutory authority to modify child support arrangements; and second, even if the court retains that authority, enforcement of nonmodification agreements would otherwise "interfere" with the application of the child support statutes and thus with the state's role in protecting the interests of children.

Father's first point is easily refuted: Parties simply do not have the power to deprive the court of its authority to modify child support where that authority is statutorily granted. *See McDonnal*, 293 Or at 779 (property settlement agreement may not preclude court's statutory power to modify spousal support; courts give effect to settlement agreements where they do not conflict with statutory powers of court). That does not answer the question, however, whether parties may agree to refrain from *requesting* that a court exercise its statutory authority to modify child support. A contractual provision by which a party agrees not to seek judicial action does not deprive a court of its authority; rather, it waives the party's right to seek the court's exercise of that authority. *See McInnis and McInnis*, 199 Or App 223, 235-36, 110 P3d 639 (2005) (parties' waiver of their right to seek modification of spousal support "has nothing to do with the authority of the court; rather, it involves only whether the parties may invoke [the court's authority]").

In making the more correctly focused point that enforcement of a party's waiver of the right to seek child support modification violates public policy, father raises an important distinction between child support terms and other terms of marital settlement agreements. For instance, an agreement not to seek modification of spousal support is an agreement between spouses that affects only the spouses themselves. An agreement not to seek modification of child support, however, also may affect the rights of the child. As explained, Oregon's child support statutes are carefully

crafted to ensure that child support is awarded in an amount that will provide for a child's needs, and those statutes permit courts and agencies to adjust that amount when circumstances change. The question father raises is whether a parent's agreement not to seek modification of child support even where a substantial change in circumstances has occurred necessarily contravenes the policies evident in that scheme.

For three reasons, we conclude that it does not. First, just as parents' agreements cannot deprive courts of statutory authority, a parent's waiver of the right to seek modification cannot affect either the child's right to seek an appropriate level of child support or the state's authority to act on behalf of a child. As noted, ORS 109.100 and ORS 25.287(1) authorize both a child and the state to seek modification of parents' child support obligations, regardless of parents' willingness to do so.

Second, although Oregon law *permits* parents to seek modification of child support when circumstances change, it does not *require* them to do so. As noted, ORS 25.270 and ORS 25.280 require that when child support is set, whether originally or on modification, the level of support be determined in accordance with the Child Support Formula and the rebuttal factors. However, neither party argues that a parent who becomes aware of a change in circumstances that would permit that parent to seek modification of child support *must* do so, and we are not aware of any such requirement. If public policy permits a parent to forego his or her statutory right to seek modification at the time that a change in circumstances arises, then public policy also may permit a parent to anticipate those circumstances and, for consideration and in the absence of fraud or duress, make an advance decision to forego that statutory right.

Third, and most importantly, ORS 107.104 and ORS 107.135(15) specifically provide that parents' marital settlement agreements will not be enforceable when *enforcement* would contravene public policy. ORS 107.104 (providing that it is the policy of the state "[f]or courts to *enforce* the terms of settlements *** except when to do so would violate the law or would clearly contravene

public policy" (emphasis added)); ORS 107.135(15) (same). Therefore, when a party seeks enforcement of a nonmodification agreement, those statutes permit a court to consider whether enforcement of that agreement would violate public policy, given the circumstances that exist at that time. Should circumstances change, a nonmodification agreement does not necessarily tie the hands of the parties or the court; if a parent can establish that enforcement of the agreement would contravene public policy, the parent may seek, and a court may order, modification of a parent's child support obligation. We conclude that ORS 107.104 and ORS 107.135(15) recognize that the enforcement of nonmodification agreements may, but does not necessarily, contravene public policy. Courts must make that determination on a case-by-case basis.

Father's final argument is that, in the circumstance in which there has been a substantial change in a parent's economic circumstances such that enforcement of a stipulated child support award would require the parent to pay child support in excess of the amount required by the Child Support Formula, enforcement of a nonmodification agreement necessarily contravenes the public policies evident in the state's adoption of that formula. In so arguing, father fails to grapple with the fact that Oregon law neither requires a parent to seek modification of child support when circumstances have changed nor precludes a parent from waiving the right to do so. Moreover, father misunderstands the purpose of the Child Support Formula and how it is applied.

Although the Child Support Formula establishes a presumptively correct child support award, a court is permitted to consider rebuttal factors and award child support that varies from the formula's prescription to ensure that the award is not "unfair" or "inappropriate." ORS 25.280. A party's agreement to pay a specified amount of support in consideration for property, debt, or financial awards is one of the factors that a court may consider in deciding whether the presumptively correct amount has been rebutted.[20] Further, the Oregon Administrative Rules

---

[20] OAR 137-050-0760(1)(l) (listing as a rebuttal factor "[f]indings in a judgment, order, decree or settlement agreement that the existing support award

specifically authorize parental agreements that deviate from the presumptively correct amount when the agreed amount is within 10 percent of the presumptively correct amount.[21] The fact that a nonmodification provision may prevent a party from seeking a reduction in support to the presumptively correct amount under the Child Support Formula does not necessarily mean that a previously stipulated, higher child support award is not fair or appropriate once such factors are considered.

More importantly, such an outcome does not *per se* contravene public policy. As noted, Oregon's child support statutes, including the Child Support Formula and rebuttal factors, are designed to protect children and provide for their needs. Thus, evidence that, under that formula and considering those factors, a stipulated child support award is *insufficient* to meet a child's needs may demonstrate that enforcement of an agreement not to seek an *increase* in the stipulated award contravenes public policy. In this case, however, father did not demonstrate that the same result pertained, nor did he posit any other public policy that would preclude enforcement of the stipulated child support award.

When the parties agreed to dissolve their marriage, they agreed that father would pay child support at a level that exceeded the presumptively correct amount under the Child Support Formula by $8 per month. The parties also agreed that father would not seek to reduce his support obligation due to a change in his income. The parties' nonmodification

---

is or was made in consideration of other property, debt or financial awards, and those findings remain relevant").

[21] OAR 137-050-0765 provides, in part:

"(2) The guideline support amount and rebuttal factors are intended to meet the needs of most families. Likewise, the rebuttal factors * * * address most situations in which the guideline amount is inappropriate. However, there will be families for whom the support amount, even rebutted, is not correct and who value the certainty of agreed support amounts.

"(3) In consideration of foregoing hearing and appeal rights, the parties may consent to a support amount that is within 10 percent of the amount determined under the guideline[s] * * *. The order must be entered with the written consent of the parties.

"(4) An agreed support amount entered pursuant to this rule is presumed to be just and appropriate within the meaning of ORS 25.280."

provision was one term in a marital settlement agreement that addressed a broad range of negotiated provisions. When father later sought modification, he contended that his circumstances had changed such that continued payment of that previously stipulated amount of support would result in a child support obligation that was *higher*, not lower, than the presumptively correct amount under the Child Support Formula. Thus, father understandably did not argue that enforcement of the obligation to pay the stipulated amount of child support failed to meet the children's needs, nor did he identify any other policy served by the Child Support Formula and violated by enforcement of the stipulated support award. We conclude that the trial court did not err in enforcing the parties' nonmodification agreement in accordance with ORS 107.104 and ORS 107.135(15).

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.