Argued and submitted April 19, 2016, reversed June 7, 2017

In the Matter of the Marriage of

Jessica Ann SHEIL,
*Petitioner-Appellant,*
*and*

Peter Murray SHEIL,
*Respondent-Respondent.*

Jackson County Circuit Court
060079D2; A157377

398 P3d 425

Russell Lipetzky argued the cause and filed the briefs for appellant.

George W. Kelly argued the cause and filed the brief for respondent.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

## SERCOMBE, P. J.

Wife appeals from a supplemental judgment of the trial court modifying the parties' stipulated judgment of dissolution to terminate spousal support. We conclude that the trial court erred in terminating support in light of the parties' agreement in the stipulated dissolution judgment that the spousal support award was nonmodifiable. We accordingly reverse the supplemental judgment.

The parties' 18-year marriage was dissolved pursuant to a stipulated judgment in 2005. At the time of dissolution, husband was working for the United States Postal Service earning $57,802 per year. Wife was employed as a receptionist, earning $15,844 per year. The dissolution judgment included an award to wife of $1,500 monthly maintenance spousal support. The judgment stated:

"[Wife] is entitled to maintenance spousal support in the amount of $1,500 per month from [husband] until [wife] remarries or dies. This award of spousal support is non-modifiable in consideration for other provisions in the General Judgment which are stipulated to by the parties."

The judgment separately stated, "Payment [of spousal support] shall not terminate or be modified until [wife] remarries or dies."

In 2014, husband retired from his job with the Postal Service to take up farming. Farming was not lucrative. He filed a petition to terminate his spousal support obligation. Wife objected, raising the provisions of the stipulated judgment providing that spousal support is nonmodifiable. The trial court believed that the stipulated judgment's provisions were unenforceable, because they interfered with husband's statutory right to request modification. The court determined that husband's retirement was taken in good faith and terminated the support.

On appeal, wife asserts that, in agreeing in the stipulated judgment that spousal support was nonmodifiable, husband waived any right to seek modification or

termination of support.[1] Wife points out that, under ORS 107.104,[2] marital settlement agreements are enforceable as a matter of public policy. Husband contends that the parties' stipulation is not enforceable, because it infringes on the court's authority under ORS 107.135 to modify a dissolution judgment.

Wife has the better argument. In *McInnis and McInnis*, 199 Or App 223, 110 P3d 639 (2005), *rev dismissed*, 338 Or 681 (2005), we noted the strong public policy favoring enforcement of marital settlement agreements, as expressed in the case law and in ORS 107.104. *See also McDonnal and McDonnal*, 293 Or 772, 779, 652 P2d 1247 (1982). We explained that there are two exceptions: A marital settlement agreement will not be enforced if doing so would contravene the law, ORS 107.104(1)(b), or if doing so deprives the court of its statutory authority. *McInnis*, 199 Or

---

[1] We reject without discussion husband's contention that wife did not preserve her argument that support was nonmodifiable under the stipulated judgment.

[2] ORS 107.104 provides:

"(1) It is the policy of this state:

"(a) To encourage the settlement of suits for marital annulment, dissolution or separation; and

"(b) For courts to enforce the terms of settlements described in subsection (2) of this section to the fullest extent possible, except when to do so would violate the law or would clearly contravene public policy.

"(2) In a suit for marital annulment, dissolution or separation, the court may enforce the terms set forth in a stipulated judgment signed by the parties, a judgment resulting from a settlement on the record or a judgment incorporating a marital settlement agreement:

"(a) As contract terms using contract remedies;

"(b) By imposing any remedy available to enforce a judgment, including but not limited to contempt; or

"(c) By any combination of the provisions of paragraphs (a) and (b) of this subsection.

"(3) A party may seek to enforce an agreement and obtain remedies described in subsection (2) of this section by filing a motion, serving notice on the other party in the manner provided by ORCP 7 and, if a remedy under subsection (2)(b) of this section is sought, complying with the statutory requirements for that remedy. All claims for relief arising out of the same acts or omissions must be joined in the same proceeding.

"(4) Nothing in subsection (2) or (3) of this section limits a party's ability, in a separate proceeding, to file a motion to set aside, alter or modify a judgment under ORS 107.135 or to seek enforcement of an ancillary agreement to the judgment."

App at 234. The marital settlement agreement in *McInnis* expressed the parties' intentions not to permit modification in several different ways. It provided that the parties waived any right to modify the spousal support provision; that they were estopped from modifying the spousal support provision; that the husband would be indemnified if the wife were successful in obtaining a modification; and that it was the parties' intention to "divest the Court of jurisdiction conferred upon it pursuant to the provisions of ORS 107.135 pertaining to modification of spousal support." *Id.* at 226. We explained in *McInnis* that the parties could not, by agreement, divest a court of its statutory authority and we invalidated that particular part of the stipulation. *Id.* at 234. But we concluded that no public policy forecloses the right of parties to waive the right to seek modification of support. *Id.* at 238. Reasoning that we had been unable to identify a law that would be violated or public policy that would be threatened by enforcing the parties' agreement to waive the right to seek modification of spousal support, we concluded that, in light of the general rule favoring enforcement of marital settlement agreements, the parties' waiver of the right to seek modification was valid and enforceable. *Id.* at 240.

*McInnis* thus establishes that parties may waive, by agreement and without violating public policy, the right to seek modification of support and that such agreements are enforceable. Indeed, given the public policy favoring enforcement of support provisions in marital settlement agreements, we have said that they "enjoy presumptive validity." *Brown and Brown*, 259 Or App 618, 627, 315 P3d 422 (2013), *rev den*, 355 Or 142 (2014).

Husband contends that the parties' agreement in this case is distinguishable from the one that we concluded was enforceable as a waiver in *McInnis*, because it actually deprives the trial court of the authority to order a modification under ORS 107.135. We disagree. The terms of a marital settlement agreement as incorporated into a dissolution judgment are to be construed in the same fashion as other contractual terms. *See Patterson and Kanaga*, 206 Or App 341, 136 P3d 1177 (2006); *Moon and Moon*, 140 Or App 402,

914 P2d 1133, *rev den*, 323 Or 484 (1996). The parties stipulated that the support award was nonmodifiable and that spousal support "shall not terminate." But, unlike the provision that we determined in *McInnis* was unenforceable, the parties' stipulation did not purport to deprive the court of authority.

*McInnis* is consistent with the Supreme Court's opinion in *Matar and Harake*, 353 Or 446, 300 P3d 144 (2013). There, the parties' stipulated judgment of dissolution stated "that neither will seek a [child] support modification." 353 Or at 449. The Supreme Court readily rejected the father's argument that the provision was invalid because it would deprive the court of its statutory authority to modify child support, explaining that the parties "simply do not have the power to deprive the court of its authority to modify child support where that authority is statutorily granted." *Id.* at 460. Rather, the court viewed the parties' agreement as a waiver of the parties' right to seek the court's exercise of its authority, and held that the provision was enforceable in the absence of a violation of law or public policy. *Id.*

Here, we decline to interpret the agreement as expressing an intention to deprive the trial court of its authority to modify support—something that parties cannot do. Rather, in the absence of an explicit statement like the one we invalidated in *McInnis*, we conclude that, as in *Matar*, the parties expressed an intention not to seek modification of spousal support. Husband has not offered any public policy reason why the provision should not be enforced. We conclude, therefore, that, under ORS 107.104, the court was required to enforce the provision and that the trial court erred in terminating husband's support obligation.[3]

Reversed.

---

[3] In view of our disposition, we do not need to address wife's second assignment of error, in which she contends that the court applied incorrect factors in determining that spousal support should be terminated.