In the Matter of the Marriage of

Patricia POLLOCK,
*Petitioner-Respondent
Cross-Appellant,*
*and*

William Lawrence POLLOCK,
*Respondent-Appellant
Cross-Respondent.*

Yamhill County Circuit Court
DO080256; A147846

313 P3d 367

Carroll J. Tichenor, Judge.

Helen C. Tompkins argued the cause and filed the briefs for appellant-cross-respondent.

William R. Valent argued the cause for respondent-cross-appellant. With him on the briefs was David N. Hobson, Jr.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

Husband appeals from a dissolution judgment, contending that the terms of a marital settlement agreement—executed after mediation—should control the division of the marital property and that the trial court erred in adjusting the property division by ordering that husband pay an additional $300,000 to wife. Husband seeks entry of a judgment specifically enforcing the terms of the marital settlement agreement. Husband also appeals from a supplemental judgment, contending that the trial court erred in denying his petition for attorney fees and costs. Wife cross-appeals from the dissolution judgment, assigning error both to the trial court's denial of her discovery request and to its refusal to hear certain evidence related to the parties' financial circumstances. Wife seeks to have the trial court's dissolution judgment set aside and to have the case remanded for a trial. Husband has moved to dismiss wife's cross-appeal on the ground that she accepted the benefits of the dissolution judgment. On husband's appeal, we reverse and remand the dissolution judgment and vacate the supplemental judgment. As to wife's cross-appeal, we deny husband's motion to dismiss and affirm.

Because we conclude that this is not an "exceptional case," we decline to exercise our discretionary authority to review the record *de novo*. ORS 19.415; ORAP 5.40(8)(c). If the trial court's findings of fact are supported by evidence in the record, we will not disturb them, *Christensen and Christensen*, 253 Or App 634, 641, 292 P3d 568 (2012), and we recite the following facts from the trial court's findings in accordance with that standard.

Husband and wife were married in 2001 after signing a premarital agreement. That agreement provided that each party would, in the event of a divorce, receive his or her separate property as listed in a schedule attached to the agreement. In May 2008, wife filed a petition for dissolution of the marriage. Wife contested the validity of the premarital agreement, but the trial court concluded that it was enforceable. That ruling is not challenged in this appeal. Eventually, the parties agreed to mediation in order to reach a settlement for the disposition of the property that

was not covered by the premarital agreement. Pursuant to the mediation, they each signed a handwritten settlement agreement that awarded them each portions of the property that was not allocated by the premarital agreement and that purported to "resolve[] all claims between the parties."

Based on that agreement, husband's counsel proposed a "Stipulated General Judgment of Dissolution of Marriage," which was forwarded to wife's attorney. After some disagreement over the terms, husband's counsel eventually submitted a proposed judgment to the trial court. Several weeks later, however, wife hired a new attorney and objected to the proposed judgment, arguing that the settlement agreement should not be enforced. Wife maintained that she had signed the settlement agreement under duress, owing to various actions of her previous attorney and the side effects of recent kidney surgery. Wife also took the position that the settlement agreement's property division was inequitable. The proposed judgment was never entered.

After a two-day hearing in August 2010, the trial court issued a letter opinion that included a lengthy valuation of the parties' assets and 13 specific findings and conclusions. The court found, among other things, that the parties had negotiated the settlement agreement at arm's length; that neither party had been coerced or improperly induced to enter the agreement; that "[wife] and [husband] entered into the mediated settlement agreement freely and voluntarily"; and that the agreement did not "violate the law or contravene public policy." Based on its interpretation of the agreement, however, the court also made an "adjustment" to the proposed settlement by ordering husband to pay wife an additional $300,000.

The court's reasoning for the adjustment requires an understanding of two distinct aspects of the parties' financial affairs: a line of credit and the "Baldocci loan." While the divorce action was pending, both parties retained access to a line of credit secured by their jointly owned ranch property. Approximately five months before the mediation that produced the settlement agreement, husband informed wife that he had drawn down the line of credit and deposited the drawn funds—approximately $266,000—in

an account titled in his name only. Husband told wife that the drawdown—which was for the maximum amount then available—was necessary to limit wife's spending, which he considered to be excessive during that time period. The settlement agreement provided that wife was to receive the ranch property subject to both the line of credit—as drawn down by husband—and a mortgage. The agreement also required husband to make monthly spousal support payments of $15,000 to wife, but allowed husband to receive credit for that obligation by making payments on the line of credit and mortgage.

That brings us to the Baldocci loan. At some point during the parties' marriage—the precise date is unclear from the record—husband made a loan of approximately $300,000 to a Ms. Baldocci.[1] Wife acknowledged at the August hearing that she had learned—before the settlement mediation—that husband had given money to Baldocci and also that she had known that the funds that husband had given to Baldocci came out of husband's separate bank account. Wife stated that she did not know the precise amount of the loan before the mediation, but that she had learned that husband had given Baldocci funds when she saw checks from his separate account made out to Baldocci. The only evidence at the hearing indicated that the Baldocci loan was made from husband's separate bank account; the settlement agreement awarded husband "all accounts in his name."

After taking evidence on the above-described transactions, the trial court adjusted the settlement agreement by ordering that husband pay wife $300,000 in addition to what was provided for in the agreement. In its letter opinion, the court made two determinations of particular relevance. The first states:

> "The Court specifically finds that the mediated settlement agreement without the distribution of the marital asset of the loan to *** Baldocci, with the values of the property adjusted as discussed above, is within the range of possible property divisions that are just and proper in all of the circumstances of this case."

---

[1] Baldocci's name is spelled at least three different ways in the trial court record; we adopt the spelling used in the court's letter opinion.

Immediately following that statement, the court concluded:

> "The Court further finds that with the adjustment of the mediated settlement agreement with the award of the loan to * * * Baldocci to [wife] continues the settlement agreement to be within the range of possible property divisions that are just and proper."

After some confusion arose between the parties as to what the judgment should provide, the trial court explained, at an October hearing, its reason for making the $300,000 adjustment. The court stated that it considered it inequitable for husband to draw down on the line of credit and then—pursuant to the settlement agreement—reduce the amount of spousal support that he owed by the amounts that he paid back on the line of credit. In an effort to rectify that perceived inequity, the court turned to the Baldocci loan, which, so far as the record reveals, had nothing to do with the line of credit beyond the fact that its outstanding balance of $300,000 approximated the amount that husband had withdrawn on the line of credit. Based on the court's conclusion that the Baldocci loan was a marital asset not allocated by the settlement agreement, it awarded the balance of that loan to wife.[2]

Husband first contends that the trial court erred by purporting to "adjust" the mediated settlement agreement because the trial court found that the settlement agreement was just and proper in its original form. The "just and proper" standard is provided by ORS 107.105(1)(f), which states:

> "(1)   Whenever the court renders a judgment of marital annulment, dissolution or separation, the court may provide in the judgment:
>
> "* * * * *
>
> "(f)   For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances."

---

[2] At the October hearing, the trial court agreed to award wife an additional $300,000 in cash rather than require assignment of the note to wife; the dissolution judgment so provides.

"[B]ecause in many cases a range of possible property divisions likely would be just and proper, a trial court ordinarily should accept a marital settlement agreement that provides for a division of property within that range." *Grossman and Grossman*, 338 Or 99, 107, 106 P3d 618 (2005). ORS 107.104(1) provides that "[i]t is the policy of this state[] (a) to encourage the settlement of suits for marital *** dissolution ***." There is a strong judicial preference for settlement agreements, one that is grounded in respect for the freedom to contract, for the right of the parties to rely on agreements made between them, and for the idea that the parties' own resolution of their dispute ought to be accorded "great weight." *McDonnal and McDonnal*, 293 Or 772, 779, 652 P2d 1247 (1982). Thus, "agreements made in anticipation of a dissolution are generally enforceable and accepted by the court when they are equitable given the circumstances of the case." *Id.* at 778. That is, if a court is presented with a marital settlement agreement that the court determines provides for a "just and proper" property division, the court should accept that settlement agreement and enter a judgment reflecting the settlement's terms. *Grossman*, 338 Or at 107.

The difficulty with husband's first argument is that it is grounded on the mistaken predicate that the trial court did, in fact, conclude that the marital settlement agreement was just and proper in its original form. That is not what the court concluded, however. It stated that the marital settlement agreement was just and proper "without the distribution of the marital asset of the loan to *** Baldocci." *See* 259 Or App 234. In other words, the court concluded that the marital settlement agreement did not, by its terms, provide for a distribution of the balance owing on the Baldocci loan.[3] However, as we explain below, the marital settlement agreement *did* distribute the balance owing on the Baldocci loan, and, accordingly, there is no conclusion from the trial court that the marital settlement agreement—as written—was

---

[3] Any confusion created on this point by the language of the trial court's letter opinion was cleared up at the October hearing, when the court stated: "I don't find that there's any reason not to take that $300,000 as an asset that was not appropriately distributed by that agreement and still needs to be distributed. If they had *forgotten* about the house, it still would have been something that needed to be distributed." (Emphasis added.)

just and proper. Thus, although husband is correct that, under *Grossman*, a trial court should ordinarily enter a judgment consistent with a settlement agreement after it has determined that the agreement provides for a just and proper division of the parties' marital property, there was no such determination in this case.[4]

Husband next urges that the trial court erred in treating the Baldocci loan in a manner contrary to the provisions of the marital settlement agreement. We agree with husband that the trial court erred, as a matter of law, in interpreting the settlement agreement. *See Grossman*, 338 Or at 101, 107-08 (reviewing the interpretation of a marital settlement agreement that had not been reduced to judgment as a matter of law).

The marital settlement agreement provides that "[husband] receives the cash value on the life insurance on his life and *all accounts in his name.*" (Emphasis added.) It also purports to "resolve[] all claims between the parties." Additionally, two important findings of the trial court go unchallenged in this appeal. The first is that "[t]he parties intended the mediated settlement agreement to resolve all issues regarding the marital property distribution, spousal support, and joint liabilities." The second is that "[wife] believed that the mediated settlement agreement had concluded the issues pertaining to the property division ***." Thus, the parties' intent is clear: The marital settlement agreement was designed to provide a disposition for all of the parties' marital property. Wife does not contend on appeal that the court was correct in concluding that the marital settlement agreement did not account for the Baldocci loan, nor does she contest husband's assertion that she was aware of the Baldocci loan prior to mediation. She also does not dispute husband's assertion that there was no evidence

---

[4] Husband also argues that ORS 107.104(1)(b) required the trial court to enter a judgment incorporating the settlement's terms. That statute is inapposite. It declares—through reference to ORS 107.104(2)—that, once a marital settlement agreement has been reduced to a judgment, it is the policy of this state "[f]or courts to enforce the terms of settlements *** to the fullest extent possible, except when to do so would violate the law or would clearly contravene public policy." ORS 107.104(1)(b). Because the marital settlement agreement was not reduced to a judgment at the time that the trial court was considering whether to enforce its provisions, the statute does not apply.

indicating that the Baldocci loan came from anywhere other than husband's separate account. The trial court's interpretation—and corresponding "adjustment"—of the agreement was flawed as a matter of law; under the terms of the settlement agreement, husband alone was entitled to repayment on the Baldocci loan.

Although we conclude that the trial court erred in interpreting the agreement, we are not in a position to provide husband with the relief that he seeks, *viz.*, requiring the trial court to specifically enforce the settlement agreement. A trial court is not automatically required to accept an agreement that has been entered into by the parties. The Supreme Court has made clear that "[a]pplication [of the just and proper standard in ORS 107.105(1)(f)] is ultimately the duty of the court, not of the parties." *Norris and Norris*, 302 Or 123, 126, 727 P2d 115 (1986); *see also Grossman*, 338 Or at 107 ("This court, while emphasizing the critical importance of settlement agreements, repeatedly has recognized the authority of the trial court in a dissolution proceeding to make a just and proper distribution of marital property."). As we have explained above, we are not reviewing this case *de novo* and there has been no determination that the settlement agreement—as properly interpreted—represents a "just and proper" division of the parties' divisible property under ORS 107.105(1)(f).

We therefore remand for the trial court to make that determination in the first instance. It is probable, however, that issues relating to one of husband's additional arguments will arise on remand, and we therefore find it prudent to address that argument. *See State v. Langley*, 331 Or 430, 440-41, 16 P3d 489 (2000) (applying that methodology). Specifically, husband asserts that there is no evidence in the record to support the trial court's stated reason for awarding the Baldocci loan to wife—*i.e.*, husband's "misconduct" with respect to the parties' line of credit. Wife argues that the court properly found that husband had engaged in misconduct with respect to the line of credit and that the $300,000 award to wife can be sustained as an exercise of the court's equitable powers.

As noted, husband's purported misconduct consisted of drawing down on the parties' joint line of credit and

then signing a settlement agreement that (1) awarded wife the ranch property subject to the drawn-down line of credit and (2) afforded him the right to credit his repayment of those borrowed funds against his monthly spousal support payments. However, the trial court found that wife "knowingly assumed responsibility for the total amount of the line of credit along with being awarded the [ranch property]."[5] That finding is not challenged in this appeal. Moreover, the court found that wife freely and voluntarily signed an agreement that unequivocally allowed husband to deduct amounts that he paid back on the line of credit against his spousal support payments. It is thus uncontroverted that wife not only knew about the effects of husband's purported "misconduct," but actually structured her negotiated bargain around those effects. In short, there is nothing in the record to support a finding that husband acted inequitably, which was the court's stated reason for awarding wife an additional $300,000.

As noted, it is Oregon's policy "[t]o encourage the settlement of suits for marital *** dissolution ***." ORS 107.104(1)(a). In the context of settlement agreements incorporated into judgments, the Supreme Court has stated:

"It is axiomatic that public policy requires that persons of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred and shall be enforced by courts of justice; and it is only when some other overpowering rule of public policy intervenes, rendering such agreements unfair or illegal, that they will not be enforced."

*McDonnal*, 293 Or at 779 (quoting *Feves v. Feves*, 198 Or 151, 159-60, 254 P2d 694 (1953)). Because Oregon has a policy of promoting settlement agreements, that statement is equally applicable where the parties have manifested their intent to be bound to an agreement that has not yet been reduced to judgment. *See Grossman*, 338 Or at 107

---

[5] The trial court valued the ranch property at $1,823,000 before the line of credit and mortgage were considered. With the Baldocci award to wife factored in, the trial court's uncontested valuations show a distribution to husband of $1,079,486 and a distribution to wife of $1,240,498, not including $840,000 in spousal support paid out over five years.

("[B]ecause in many cases a range of possible property divisions likely would be just and proper, a trial court ordinarily should accept a marital settlement agreement that provides for a division of property within that range."); *McDonnal*, 293 Or at 779 ("The parties' own resolution of their dispute should be accorded great weight. \* \* \* Where parties have foregone their opportunity to litigate disputes and have chosen instead to enter into an agreement their reliance on the agreement can be presumed."). Although there may be cases in which it is appropriate for a trial court to disregard a marital settlement agreement because of a party's inequitable conduct, it would—in light of Oregon's policy of promoting settlement agreements—be an abuse of discretion to do so in the particular facts of this case, where the parties have not only considered the effect of the perceived misconduct, but structured their bargain around it. *See, e.g., Githens and Githens*, 227 Or App 73, 90, 204 P3d 835, *rev den*, 347 Or 42 (2009) (we review a just and proper determination for abuse of discretion).

Husband also contends that the trial court erred in denying his request for attorney fees that he incurred in the course of litigating the validity of the settlement agreement. Because we are reversing the trial court's property division, we vacate the trial court's supplemental judgment that denied husband those attorney fees. *See Garza and Garza*, 201 Or App 318, 330, 118 P3d 824 (2005); *Proctor and Proctor*, 204 Or App 250, 252, 129 P3d 186, *rev den*, 340 Or 672 (2006) ("In light of our decision to reverse and remand the property division for reconsideration, we vacate the trial court's decision on attorney fees and remand for reconsideration of that issue as well.").

We now turn to wife's cross-appeal, in which she argues that a discovery order of the trial court improperly prevented her from investigating—and presenting evidence to the court of—husband's separate assets.[6] Wife first filed

---

[6] During the pendency of this appeal, husband filed a motion to dismiss wife's cross-appeal, contending, in part, that she should be precluded from challenging the judgment of dissolution because she accepted the benefits of both that judgment and the marital settlement agreement. *See generally Hofer v. Hofer*, 244 Or 88, 415 P2d 753 (1966) (discussing when a party may be barred from appealing a dissolution judgment after accepting benefits under that judgment). With respect to that basis for the motion to dismiss, the Appellate Commissioner deferred a

a request for production of documents several months after she initiated the dissolution proceedings. After the premarital agreement was adjudged enforceable, wife's counsel continued to request discovery materials from husband. In one letter sent to husband's attorney, wife's counsel stated, "If we can reach some understanding with regards to [our discovery requests and another matter], then we are more than willing to mediate." Husband's counsel eventually sought a protective order to limit disclosure related to husband's business assets. The record indicates that the trial court did not directly rule on the motion for a protective order, or on wife's request for production, but instead set "parameters" on the discovery. The court indicated that, in light of the premarital agreement, it would permit discovery into certain of husband's separate property, but explicitly deferred ruling on the discovery issues in order to see if the parties could reach a mutually agreeable property division without court interference.

Husband's counsel subsequently conveyed a substantial amount of the requested discovery materials to wife's counsel, but withheld certain other materials on the ground that they were not relevant in view of the premarital agreement. The parties then negotiated and signed their settlement agreement, which purported to "resolve[] all claims between the parties."

Several months after the parties signed their agreement, wife's new counsel filed a request for production of documents. The trial court stated that it would not order wife's requested discovery in the event that it found that the settlement agreement was enforceable.

Wife maintains that the trial court's limitation on discovery necessarily resulted in a settlement that was not just and proper in all of the circumstances under ORS

---

ruling to the panel hearing the merits of the case. Although husband asserts that wife has accepted the benefits of the judgment's provisions, husband has not offered any evidence indicating that wife has accepted those benefits since the entry of the dissolution judgment on February 8, 2011. With respect to husband's assertion that wife's cross-appeal should be dismissed because she accepted the benefits of the settlement agreement before the entry of judgment, husband points us to no law that would support such a conclusion. Husband's motion to dismiss wife's cross-appeal on those grounds is therefore denied.

107.105(1)(f), because all of the circumstances—*i.e.*, the extent and nature of husband's separate assets—were not before the court at the hearing. She specifically contends that two statutes compel discovery in this case. ORS 107.105 provides, in part:

"(1)  Whenever the court renders a judgment of marital annulment, dissolution or separation, the court may provide in the judgment:

"* * * * *

"(f)  For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. In determining the division of property under this paragraph, the following apply:

"* * * * *

"(F)  The court shall require full disclosure of all assets by the parties in arriving at a just property division."

In addition, wife cites ORS 107.089, which provides that, upon the request of one party to a dissolution proceeding, the other party must furnish copies of certain documents such as tax returns, deeds to real property in which a party has an interest, certificates of title, and information related to stock ownership.[7]

---

[7] ORS 107.089 states, in relevant part:

"(1) If served with a copy of this section as provided in ORS 107.088, each party in a suit for legal separation or for dissolution shall provide to the other party copies of the following documents in their possession or control:

"(a) All federal and state income tax returns filed by either party for the last three calendar years;

"(b) If income tax returns for the last calendar year have not been filed, all W-2 statements, year-end payroll statements, interest and dividend statements and all other records of income earned or received by either party during the last calendar year;

"(c) All records showing any income earned or received by either party for the current calendar year;

"(d) All financial statements, statements of net worth and credit card and loan applications prepared by or for either party during the last two calendar years;

"(e) All documents such as deeds, real estate contracts, appraisals and most recent statements of assessed value relating to real property in which either party has any interest;

Although she does not cite with any specificity the documents that she seeks, to the extent that wife relies on ORS 107.089 as necessitating discovery, we conclude that she waived that argument by signing the settlement agreement. "[I]t is possible to waive * * * statutory rights." *McMillan v. Follansbee*, 194 Or App 145, 154, 93 P3d 809 (2004). "As with contractual waiver, the waiver of a statutory right is an intentional relinquishment or abandonment of a known right or privilege." *Id.*

Wife's discovery requests were pending before the trial court at the time that she voluntarily signed the settlement agreement, which, again, purported to "resolve[] all claims between the parties." To the extent that wife did not have as full a view of husband's separate assets as she wished at the mediation, she relinquished any right to conduct a more thorough inquiry by signing that agreement. Husband's counsel provided a substantial amount of information before the mediation, while simultaneously refusing to turn over other requested items. At that point, wife could have refused to settle and persisted in her discovery requests. She chose to settle, and she did so while apparently content with knowing what discovery materials she wanted but did not have.[8]

---

"(f) All documents showing debts of either party, including the most recent statement of any loan, credit line or charge card balance due;

"(g) Certificates of title or registrations of all automobiles, motor vehicles, boats or other personal property registered in either party's name or in which either party has any interest;

"(h) Documents showing stocks, bonds, secured notes, mutual funds and other investments in which either party has any interest;

"(i) The most recent statement describing any retirement plan, IRA pension plan, profit-sharing plan, stock option plan or deferred compensation plan in which either party has any interest; and

"(j) All financial institution or brokerage account records on any account in which either party has had any interest or signing privileges in the past year, whether or not the account is currently open or closed.

"* * * * *

"(5) The provisions of this section do not limit in any way the discovery provisions of the Oregon Rules of Civil Procedure or any other discovery provision of Oregon law."

[8] That conclusion is reinforced by the language of a letter sent by wife's attorney six months before the mediation, which stated, in part:

"We want the discovery we originally requested. In your original response, there were a number of items that you said you would provide us that you

Additionally, allowing wife additional discovery under ORS 107.089 would be inconsistent with Oregon's statutory policy of "encourag[ing] the settlement of suits for marital annulment, dissolution or separation." ORS 107.104(1)(a). To allow one party to attack the validity of a settlement agreement by claiming a lack of discovery would undercut the incentive for the other party to negotiate in the first place. It is entirely probable that divorcing parties may desire to end their property disputes as quickly and painlessly as possible. As such, parties may wish to bargain away certain property, rights, and interests in order to spare the time and expense of fully litigating their dissolution. *See McDonnal*, 293 Or at 779 ("Where parties have foregone their opportunity to litigate disputes and have chosen instead to enter into an agreement their reliance on the agreement can be presumed."). Oregon's policy of promoting settlement agreements is better served by protecting reliance on those agreements than by allowing parties to second-guess their own litigation choices.

The fact that wife waived her right to discovery under ORS 107.089 does not end the inquiry. ORS 107.105(1)(f)(F) provides that a court "shall require full disclosure of all assets" when arriving at a just and proper division in all the circumstances. Wife urges that this language requires a trial court to order full discovery irrespective of whatever actions the parties have taken. It is at least implicit in prior decisions, however, that a trial court may presume that parties who have reached a settlement agreement after an arm's length negotiation have already sufficiently considered the nature and extent of each other's holdings. In *McDonnal*, for instance, the Supreme Court held that a court may approve a settlement agreement without engaging in an analysis of the statutory factors set out in ORS 107.105(1)(c) (1981), *amended by* Or Laws 1999, ch 587, § 1 and Or Laws 2011, ch 115, § 2.[9] 293 Or at 778. That statute

---

have not and we want the rest of the items that you said were not allowed because of the Prenuptial Agreement.

"If we can reach some understanding with regards to [that and one other issue], *then we are more than willing to mediate.*"

(Emphasis added.)

[9] ORS 107.105(1)(c) (1981), as amended, is now codified at ORS 107.105(1)(d).

authorized a court to either review and approve a proposed settlement agreement or to award spousal support in a "just and equitable" amount in the absence of an agreement. ORS 107.105(1)(c) (1981). It also commanded that, "[i]n making such support order, the court *shall* consider [a list of statutory factors]." *Id.* (emphasis added). Thus, the question presented was whether the text of that statute required the trial court to consider the entire list of statutory factors in cases where the parties themselves proposed a spousal support value in a settlement agreement. Despite the use of the word "shall"—a term also found in ORS 107.105(1)(f)(F)— the Supreme Court concluded that the parties could voluntarily obviate the court's statutory obligation to conduct a detailed inquiry by presenting their own agreement to the court: "We do not read the statute to require the court to apply an analysis of the statutory factors to the circumstances of each case when confronted with a proposed agreement." *McDonnal*, 293 Or at 778.

Although the result in *McDonnal* was partly based on the text of that spousal support statute, the case was not an outlier. Oregon law affords wide latitude to parties in crafting settlement agreements, and it even allows parties to create enforceable terms that a trial court itself could not impose. *See Patterson and Kanaga*, 242 Or App 452, 471, 255 P3d 634, *rev den*, 351 Or 216 (2011) ("[T]he fact that a marital settlement agreement contains terms other than those that a court could order absent the agreement does not necessarily mean that the agreement violates the law or is clearly contrary to public policy."); *see also Reeves and Elliott*, 237 Or App 126, 130, 238 P3d 427 (2010) (parties may stipulate to support terms that a court itself could not order absent an agreement); *McInnis and McInnis*, 199 Or App 223, 240, 110 P3d 639, *rev dismissed*, 338 Or 681 (2005) (through settlement agreements, parties may waive their statutory right to seek modification of spousal support); *Eidlin and Eidlin*, 140 Or App 479, 483-84, 916 P2d 338 (1996) (parties may provide for a more permissive basis to seek modification of a spousal support award than a court would be allowed to provide for under the relevant statute).

In light of the foregoing, and this state's policy of favoring settlement agreements, the asset disclosure provision of ORS 107.105(1)(f)(F) does not impose a requirement on trial courts to compel complete discovery in order to permit one party to reexamine the circumstances underlying a voluntary settlement agreement. Although there may well be situations where it is appropriate for a trial court to order discovery of a party's separate assets after being presented with a voluntary settlement agreement, the facts of this case demonstrate why ORS 107.105(1)(f)(F) does not create a strict requirement that it do so. First, wife argues that the nature and extent of husband's separate property under the premarital agreement is a "circumstance" that must be considered under ORS 107.105(1)(f), but it is just as easy to classify her relinquishment of any claim to that property as a circumstance as well. Moreover, the fact that wife voluntarily signed a settlement agreement is a circumstance, as is the fact that she signed that agreement while some of her discovery requests were outstanding. *See Conrad and Conrad*, 191 Or App 283, 292, 81 P3d 749 (2003) (stating that ORS 107.105(1)(f) reflects a legislative intent to require "full and frank disclosure of all circumstances *materially* bearing on the dissolution judgment" (internal quotation marks omitted; emphasis added)). In view of both the statutory policy favoring settlement agreements and the unique factual circumstances of this case, the trial court did not err in refusing to order discovery of husband's separate assets in making its property division under ORS 107.105(1)(f).

Finally, the trial court informed the parties, before the August hearing, that it was not going to hear evidence relating to certain of husband's separate assets because of the premarital agreement. Wife assigns error to that decision on the ground that the trial court was required to consider the nature and extent of husband's separate property in reaching a just and proper property distribution. Leaving aside that wife does not identify any particular piece of evidence or testimony that the trial court improperly refused to admit into evidence at the hearing, we reject wife's argument for the same reasons that we reject her discovery arguments: The trial court was not required, on the facts of this case, to consider the nature and extent of husband's separate

assets—covered by the premarital agreement—after it was presented with a settlement agreement that was freely and voluntarily entered into by wife.

On appeal, general judgment reversed and remanded as to property division, otherwise affirmed; supplemental judgment vacated and remanded. On cross-appeal, husband's motion to dismiss denied; affirmed.