Argued and submitted April 8, vacated and remanded for reconsideration of spousal support and attorney fees; otherwise affirmed November 27, 2013, petition for review denied March 27, 2014 (355 Or 142)

In the Matter of the Marriage of

Kathleen Kay BROWN,
nka Kathleen Kay McLaughlin,
*Petitioner-Appellant,*
*and*

Timothy Martin BROWN,
*Respondent-Respondent.*

Clackamas County Circuit Court
DR11020154; A150044

315 P3d 422

Philip F. Schuster, II, argued the cause and filed the briefs for petitioner.

Andrew W. Newsom argued the cause for respondent. With him on the brief was Stahancyk, Kent & Hook PC.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Duncan, Judge.

DUNCAN, J.

**DUNCAN, J.**

Wife appeals from a dissolution judgment enforcing a settlement agreement. She contends that the trial court erred as a matter of law in enforcing the agreement and in adopting the agreed-upon spousal support amount, without first determining that it was "just and equitable." Wife also asserts that the court erred in awarding husband his attorney fees and costs. We conclude that the trial court erred, and, therefore, we vacate the judgment in part and remand.

In February 2011, wife sought dissolution of the parties' eight-year marriage. At that time, wife was 45 and husband was 39. Wife had previously been employed as a realtor but at the time she filed for dissolution she was unable to work due to back injuries and had been receiving Social Security disability benefits for approximately two months. Husband was employed as an engineer; his gross income in 2010 was $86,000. There are no children of the marriage.

On May 5, 2011, the parties, represented by counsel, attended a mediation session, during which wife's attorney submitted a settlement offer. Husband accepted the offer, and wife's attorney drafted a document entitled "Memorandum of Settlement," which both parties dated and signed that same day. The agreement divided the parties' assets, allocating to wife the long half of the marital property. It provided for spousal support to wife in the amount of "$1,300/month for three years; then $750/month for two years."

Although the parties exchanged drafts of a stipulated judgment, the marital settlement agreement was never incorporated into a stipulated judgment. The court set a trial date for the dissolution, and husband filed a motion and order to show cause why the settlement agreement should not be "enforced."

The court took testimony at a hearing on husband's motion and, in a general judgment of dissolution, made the following findings:

"1.   On May 5, 2011, the parties participated in a mediation of their pending divorce with retired Clackamas County Circuit Court, Judge John Lowe.

"2. Both parties were represented by counsel.

"3. Wife is permanently disabled and receives Social Security Disability.

"4. Wife had been prescribed and had been taking muscle relaxants and pain medication at the time of mediation.

"5. Until Wife was disabled, she worked as a real estate broker.

"6. During the mediation, Wife's attorney [Ms. McFarland] * * * made a settlement offer to Husband with Wife's consent. Husband accepted that offer.

"7. The agreement was reduced to writing and signed by both parties on the same day as the mediation, May 5, 2011.

"8. Judge Lowe, Ms. McFarland and Husband did not believe Wife to be impaired or unable to understand the nature of the agreement that was being entered into.

"9. At no time prior to signing the agreement did Wife state that she was confused or unable to comprehend what she was agreeing to.

"10. Although Judge Lowe offered recommendations on the terms of the settlement, he did not dictate the terms of the settlement.

"11. Subsequent to the day of the mediation, Wife's attorney drafted a proposed form of Judgment. Wife's attorney reviewed the proposed Judgment with Wife and as a result of that meeting and later conversations, prepared a second and a third draft of the Judgment. That version of the Judgment was sent to Husband's attorney, who prepared suggested changes and sent those back to Wife's attorney.

"12. Wife's attorney sent the proposed changes to Wife. Thereafter, Wife retained new counsel.

"13. Both parties voluntarily and intelligently entered into the agreement with the full understanding and intent that it would control the division of their property, allocate debts, and establish the amount and duration of spousal support at dissolution.

"14. The language of the agreement is unambiguous. The agreement provides that Husband is to bear the vast majority of the marital debt. That Wife is to receive the lion share of the marital assets. *Given the length of the marriage and the circumstances of the parties, the court might have made a different decision about the assets, debts and support, but the agreement entered into by the parties does not rise to the level of being inconsistent with public policy.*"

(Emphasis added.) The court ordered that "[t]he motion to enforce settlement agreement is granted." The judgment, which essentially incorporated the terms of the settlement agreement, contained an explanation of the court's acceptance of the parties' agreement relating to spousal support:

"Based upon the parties' settlement agreement, the court finds that Husband should pay transitional spousal support to Wife. The following factors are considered by the court in accepting the parties' settlement agreement and awarding a support judgment:

"(1) The duration of the marriage is eight years[;]

"(2) Wife has not worked outside the home for some time. Her last employment was as a realtor, but her license is not current;

"(3) Wife will require surgery on her back. She currently receives disability payments which are not sufficient to support her.

"(4) Support will be taxable income to Wife and a tax deduction to Husband."

The trial court ordered that

"[h]usband will pay transitional spousal support in the amount of $1,300 per month for a period of forty-three (43) months, followed by payments of $750 per month for an additional seventeen (17) months, for a total duration of sixty (60) months."[1]

---

[1] As mentioned, the May 5 Memorandum of Settlement provided for spousal support to wife of "$1,300/month for three years; then $750/month for two years." 259 Or App at 619. After signing the memorandum, the parties agreed to spousal support to wife of "$1,300 per month for a period of forty-three (43) months, followed by payments of $750 per month for an additional seventeen (17) months," which the trial court awarded.

The trial court also awarded husband his attorney fees, explaining,

"I find [wife's] actions in refusing to abide with the settlement agreement to have been in bad faith. Even if I had not found her actions to have been in bad faith, I would have made an award of attorney fees because of ORS 20.075(1)(a), regarding '[t]he conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal,' and (b), regarding '[t]he objective reasonableness of the claims and defenses asserted by the parties.' [Wife] voluntarily and intelligently entered into a mediated agreement, which was reduced to writing and signed. The agreement is unambiguous, and it was objectively unreasonable for her to refuse to abide by it."

On appeal, wife contends that the trial court erred in two respects: (1) in granting husband's motion to enforce the settlement agreement and entering a judgment incorporating the spousal support terms of the agreement rather than awarding what wife considers to be a "just and equitable" amount under ORS 107.105(1)(d); and (2) in awarding husband his attorney fees.

Wife requests that we exercise our discretion to review the judgment *de novo*, ORS 19.415(3)(b), contending that this is an "exceptional case" justifying *de novo* review, because the trial court's judgment reflects an error of law and, further, does not comport with the uncontroverted evidence in the record. We agree with wife that the trial court's judgment reflects legal error that requires a reevaluation of the record. *See McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 185, 188, 957 P2d 1200 (1998) (a trial court's exercise of its discretion must comport with the applicable legal framework). However, that reevaluation involves factual issues that are not developed on this record, and for that reason, we decline to exercise our discretion to review the trial court's judgment *de novo*.

We begin with the applicable statutes and case law. ORS 107.105(1)(d) governs spousal support. It provides, in part:

"(1)   Whenever the court renders a judgment of marital annulment, dissolution or separation, the court may provide in the judgment:

"* * * * *

"(d) For spousal support, an amount of money for a period of time as may be just and equitable for one party to contribute to the other, in gross or in installments or both. The court may approve an agreement for the entry of an order for the support of a party."

Thus, under ORS 107.105(1)(d), in setting spousal support, the court has discretion to approve an agreement of the parties for support.

ORS 107.104 expresses a state policy favoring, *inter alia*, marital settlement agreements and providing for the enforcement of those agreements that have been incorporated into a judgment. It provides:

"(1) It is the policy of this state:

"(a) To encourage the settlement of suits for marital annulment, dissolution or separation; and

"(b) For courts to enforce the terms of settlements described in subsection (2) of this section to the fullest extent possible, except when to do so would violate the law or would clearly contravene public policy.

"(2) In a suit for marital annulment, dissolution or separation, the court may enforce the terms set forth in a stipulated judgment signed by the parties, a judgment resulting from a settlement on the record or a judgment incorporating a marital settlement agreement:

"(a) As contract terms using contract remedies;

"(b) By imposing any remedy available to enforce a judgment, including but not limited to contempt; or

"(c) By any combination of the provisions of paragraphs (a) and (b) of this subsection.

"(3) A party may seek to enforce an agreement and obtain remedies described in subsection (2) of this section by filing a motion, serving notice on the other party in the manner provided by ORCP 7 and, if a remedy under subsection (2)(b) of this section is sought, complying with the statutory requirements for that remedy. All claims for relief arising out of the same acts or omissions must be joined in the same proceeding."

Thus, ORS 107.104(1)(b) addresses settlements, the terms of which have been incorporated into a judgment. ORS 107.104 provides that such settlements may be enforced through contract remedies, or through any other remedy available for the enforcement of a judgment. ORS 107.104 was enacted in 2001 for the purpose of overturning the Supreme Court's decision in *Webber v. Olsen*, 330 Or 189, 998 P2d 666 (2000), in which the court had declined to enforce as a contract an agreement contained in a stipulated judgment of dissolution. *Grossman and Grossman*, 338 Or 99, 107 n 4, 106 P3d 618 (2005).

The Supreme Court recently noted in *Matar and Harake*, 353 Or 446, 456, 300 P3d 144 (2013), that ORS 107.104 is consistent with the court's decision in *McDonnal and McDonnal*, 293 Or 772, 778, 652 P2d 1247 (1982), in which the court addressed the role of marital settlement agreements in the court's determination of spousal support under ORS 107.105 (1981). In *McDonnal*, which predated ORS 107.104, the court addressed the question of the enforceability of a marital settlement agreement, incorporated into a dissolution decree, that provided for a review of spousal support "at the expiration of three years" without a showing of a change in circumstances. 293 Or at 775. Similar to today's version, ORS 107.105(1) (1981) provided a list of factors that the court should consider in making a spousal support award. Also similar to today's version, ORS 107.105(1) (1981) further provided that "[t]he court may approve, ratify and decree voluntary property settlement agreements providing for contribution to the support of a party." Although the court expressed its general disapproval of an agreement that dispenses with the requirement for a change in circumstances, *id.* at 786, the court explained that, under ORS 107.105 (1981), "agreements made in anticipation of a dissolution are generally enforceable and accepted by the court when they are equitable given the circumstances of the case." *Id.* at 778 (citations and footnotes omitted). Thus, before the enactment of ORS 107.104 in 2001, the Supreme Court had recognized a presumption in favor of the enforcement of marital dissolution agreements. Although the decision whether to approve a settlement agreement and incorporate it into the judgment is ultimately within the court's

discretion, such agreements are, as the court observed in *McDonnal*, "generally enforceable and accepted by the court when they are equitable given the circumstances of the case." *Id.*

The court further explained in *McDonnal* that a settlement agreement has additional significance when it is approved by the court and incorporated into the dissolution judgment. In that circumstance, the court said, the agreement is to be enforced "as a matter of public policy." *Id.* at 779. The court explained:

> "The parties' own resolution of their dispute should be accorded great weight. * * * Where parties have foregone their opportunity to litigate disputes and have chosen instead to enter into an agreement their reliance on the agreement can be presumed. Inequity may result if this court adopts a policy of less than full enforcement of mutually agreed upon property and support agreements."

We turn to an application of the statutes and case law to the present case, which involves a settlement agreement not incorporated into a stipulated judgment and subsequently repudiated by wife. Wife does not challenge the trial court's finding that the parties "voluntarily and intelligently entered into the agreement with the full understanding and intent that it would control the division of their property, allocate debts, and establish the amount and duration of spousal support at dissolution[,]" and that finding is supported by legally sufficient evidence. However, in her first assignment of error, wife contends that where, as here, an agreement has not been incorporated into a judgment and, in fact, has been repudiated by one of the parties, the trial court errs in specifically enforcing the terms of the agreement pursuant to ORS 107.104 without also first considering, under ORS 107.105(1)(d), whether the spousal support award is just and equitable. In wife's view, in contrast to a settlement agreement approved by the court and incorporated into a judgment, which the court must specifically enforce under ORS 107.104(2) unless contrary to public policy, a settlement agreement that has not been incorporated into a judgment is not subject to specific enforcement under ORS 107.104(2), and provides guidance to a trial court only

in setting the terms of a dissolution judgment under ORS 107.105. Wife contends that, as evidenced by the trial court's determination that the agreement did not violate public policy, in enforcing the parties' agreement in this case, the trial court mistakenly applied the standard set forth in ORS 107.104(1)(b), and did not consider whether, under ORS 107.105, the support award was just and equitable.

Husband agrees that the case is not directly controlled by ORS 107.104(1)(b) because the settlement agreement was never incorporated into a judgment. Husband contends, however, that it is clear from the judgment that the trial court did not assume that the case was governed by ORS 107.104(1)(b), because, although the court made a reference to "public policy," the court did not explicitly cite ORS 107.104; instead, the court cited the factors set out in ORS 107.105 by which the court is to independently evaluate and accept the parties' agreement. In any event, citing *McDonnal*, husband argues that the court did not err in determining that the parties' agreement is enforceable—or at least entitled to great weight—and did not abuse its discretion in enforcing the terms of the agreement.

The first question that we address is the standard that applies to a trial court's consideration of a marital settlement agreement relating to spousal support that has not been incorporated into a judgment. Both of the parties correctly reason that such an agreement is not explicitly subject to ORS 107.104, which applies only to agreements incorporated into a judgment. *See Grossman*, 338 Or at 107 n 4. Both parties also appear to agree that the settlement agreement is nonetheless "enforceable," subject to the court's discretionary determination that the agreement provides for support within a range that is "just and equitable" under ORS 107.105.

In *Grossman*, the Supreme Court discussed in *dicta* essentially the same question presented here, in the context of an agreement relating to the division of marital property in anticipation of separation but not incorporated into a stipulated judgment: What weight is the trial court to give to such an agreement? On the one hand, the court said, under ORS 107.105(1), a trial court is authorized to reject a marital

settlement agreement if its enforcement would be inequitable and, instead, to make a just and proper distribution based on the court's assessment of all the circumstances. *Id.* at 107. On the other hand, the court said, in view of the policy in favor of settlement, in deciding on a division of property, a court should not substitute its own judgment of what is "just and proper" for the parties' validly executed arm's-length settlement agreement, and should ordinarily accept a settlement agreement's division of property if it is within the range of just and proper property divisions. *Id.* at 106-07; *see Pollock and Pollock,* 259 Or App 230, 313 P3d 367 (2013).

The Supreme Court's discussion of the treatment of marital settlement agreements in the context of property divisions is equally apt in the context of settlement agreements relating to spousal support. Under ORS 107.105(1)(d), the court is authorized to make an award of support "as may be just and equitable for one party to contribute to the other." Just as there is a range of reasonableness for a division of property, there is a range of reasonableness for a "just and equitable" award of spousal support. *See Potts and Potts,* 217 Or App 581, 587, 176 P3d 1282 (2008). This court will not modify a trial court's award of support that is within that range. *Id.*

And, like all marital settlement agreements, agreements relating to support enjoy presumptive enforceability. *Reeves and Elliott,* 237 Or App 126, 129, 238 P3d 427 (2010). Although under ORS 107.105(1)(d) a trial court has discretion not to approve an agreement, in light of the strong policy favoring settlements, the court should not substitute its judgment for that of the parties as to an award that is within the range of what is just and equitable.

Having determined the proper standard for evaluating the weight to be assigned a validly executed settlement agreement that has not been incorporated into a stipulated judgment, we consider the trial court's judgment in this case in light of wife's first assignment of error. As noted, in wife's view, the court's judgment shows that the court erroneously assumed that it was required to enforce the parties' agreement unless it was in violation of public policy—the

standard applicable under ORS 107.104 to settlement agreements incorporated into judgments. The trial court found: "Given the length of the marriage and the circumstances of the parties, the court might have made a different decision about the assets, debts and support, but the agreement entered into by the parties does not rise to the level of being inconsistent with public policy." The trial court's finding that the agreement was not in violation of public policy supports wife's contention that the trial court believed it was evaluating the settlement agreement under ORS 107.104(1)(b), rather than ORS 107.105(1)(d). Wife asserts, further, that an evaluation of whether an agreement violates public policy does not necessarily implicate the same factors involved in determining whether a spousal support award is in the range of what is "just and equitable." Therefore, wife contends, a determination that a spousal support award does not violate public policy is not the same as a determination that the award is just and proper.

Husband asserts that the judgment itself indicates that the trial court made an independent determination that transitional support is appropriate, as evidenced by the court's statement that, "[b]ased upon the parties' settlement agreement, the court *finds*" that husband should pay transitional support. (Emphasis added.) The judgment also includes a list of factors from ORS 107.105(1)(d) that the judgment says were "considered by the court" in accepting the parties' agreement and awarding support. We agree that those references could support husband's view that the trial court conducted an independent evaluation of the evidence to determine whether the support awarded was just and equitable. But the hearing itself did not focus on that question and, when the judgment is read as a whole, it is apparent that the court's findings, based on the evidence presented at the hearing, focused on the validity of the agreement itself and were directed to the question whether the agreement was enforceable. The court's finding that the agreement was not in violation of public policy reflects an understanding that the court was required to enforce the agreement unless it was contrary to public policy. In view of that, we conclude that the listing of factors from ORS 107.105 was more of a *pro forma* recitation than an independent evaluation to

determine whether the parties' agreement was just and equitable. Indeed, the trial court did not address factors that it would have needed to address in order to award transitional support. *See Cassezza and Cassezza*, 243 Or App 400, 404-05, 260 P3d 504 (2011) ("The wording of [ORS 107.105(1)(d)(A)] limits the purposes for which transitional support may be awarded to those 'needed for a party to attain education and training' for job market re-entry or advancement.").

We conclude that wife is correct that the record does not reflect that the trial court took evidence regarding or engaged in an independent evaluation of whether the spousal support to which the parties agreed in the settlement agreement was just and equitable. In light of that conclusion, we remand the judgment for reconsideration of the spousal support award. Also in light of our conclusion, we vacate and remand the award of attorney fees.

Vacated and remanded for reconsideration of spousal support and attorney fees; otherwise affirmed.[2]

---

[2] It is worth emphasizing that we have expressed no opinion regarding whether the trial court's support award was just and equitable. Instead, we are remanding this case to the trial court to reconsider the spousal support award under ORS 107.105(1)(d), as opposed to ORS 107.104(1)(b). When doing so, the court may, of course, consider the facts relevant to a support award that the parties have identified on appeal, including facts relating to the settlement agreement, the property division, and their employment opportunities and earning capacities.