Argued and submitted May 1, 2013, spousal support and life insurance awards vacated and remanded for reconsideration; otherwise affirmed February 20, 2014.

In the Matter of the Marriage of

Julie A. HAGGERTY,
nka Julie Ann Blair,
*Petitioner-Respondent,*
*and*

Ancer L. HAGGERTY,
*Respondent-Appellant.*

Multnomah County Circuit Court
100463778; A149247

322 P3d 1101

W. Michael Gillette argued the cause for appellant. With him on the briefs were Leora Coleman-Fire and Schwabe, Williamson & Wyatt, P.C.

Liza Jane Langford argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

SERCOMBE, J.

## SERCOMBE, J.

Husband appeals a dissolution judgment, contending that the trial court's award of $7,000 per month in maintenance spousal support to wife was not just and equitable and that, in any event, the trial court erred in refusing to enforce a marital settlement agreement between the parties. In husband's view, the court should have incorporated into the dissolution judgment a purported marital settlement agreement which, according to husband, included agreements "to award Wife $4,000 per month of spousal support, provide her with $50,000 of life insurance, and file joint state and federal taxes whereby Husband would receive any tax refund." Wife responds that the trial court's spousal support award was "fair and equitable" and that the trial court did not err in denying husband's motion to enforce the settlement agreement. Because the trial court did not determine whether the parties had entered into a valid settlement agreement and, in the event there was such an agreement, did not consider whether the terms of that agreement were within the range of what would be just and equitable under the circumstances, we vacate the dissolution judgment in part, remand for reconsideration of the spousal support and life insurance awards, and otherwise affirm.[1]

The parties seek *de novo* review in this case. *See* ORS 19.415(3) (Court of Appeals has discretion to review *de novo* in equitable actions). We exercise our discretion to review *de novo* only in exceptional cases, and, based on the rationale advanced in favor of such review by the parties,[2] we are

---

[1] We note that wife urges the court to modify the dissolution judgment in a number of respects. For example, she contends that the court should "reexamine the distribution of assets and debts of the parties" and award her a $1 million life insurance policy held by husband. Because wife has not cross-appealed the dissolution judgment, we decline to consider her arguments on those issues and do not address them further.

[2] Husband, in his first assignment of error, asserts that the court should conduct *de novo* review "because the dispute here is not about what the facts are, but rather about what level of spousal support would be just and equitable in light of those facts." Typically, however, appellate cases involve the legal effect of particular, proven facts, and *de novo* review is not a component of that analysis. In his second assignment of error, husband states that the trial court's denial of his "motion to enforce the marital settlement agreement and the court's refusal to consider the terms of that agreement were errors of law." However, because

not persuaded that this is such a case. *See* ORAP 5.40(8)(c) ("The Court of Appeals will exercise its discretion to try the cause anew on the record or to make one or more factual findings anew on the record only in exceptional cases. Consistently with that presumption against the exercise of discretion, requests [for *de novo* review] are disfavored."); *see also* ORAP 5.40(8)(a) ("In those proceedings in which the Court of Appeals has discretion to try the cause anew on the record and the appellant seeks to have the court exercise discretion, the appellant shall concisely state the reasons why the court should do so."). Accordingly, we decline to review the case *de novo* and "state the facts consistently with the trial court's express and implied findings, supplemented with uncontroverted information from the record." *Kirkpatrick and Kirkpatrick*, 248 Or App 539, 541, 273 P3d 361 (2012).

The parties in this case were married for 27 years and, at the time of trial, wife was 61 and husband was 66. Wife was a retired school principal, part-time substitute teacher, and an author of children's books. Husband was a senior judge with the United States District Court. At the time of the dissolution, husband's monthly gross income was $17,734, consisting of Social Security of $1,435, a veteran's association pension of $875, PERS benefits of $924, and $14,500 for his work as a senior federal judge. Wife's monthly gross income from PERS was $2,965. Both parties had had health issues in the past but were medically stable at the time of trial.

On April 12, 2011, the day before the dissolution trial began, husband filed a motion asserting that, on October 7 and 29, 2010, the parties and their attorneys had met with a mediator and "reached an oral agreement which [the mediator] confirmed by reporting the case as settled to Husband's counsel." However, wife did not sign a settlement agreement or a stipulated judgment. According to husband, the terms of the oral agreement were, in relevant part, that (1) wife would receive indefinite spousal support of $4,000 per month, (2) wife would receive $50,000 in life insurance,

the court may conduct *de novo* review, husband requests that the court "enter an order that incorporates the parties' marital settlement agreement."

and (3) the parties would file a joint tax return for 2010.[3] Husband urged that there is a policy in favor of settlements in dissolution cases. He asserted that the agreement was "final and enforceable" and that wife "had breached her contractual obligation" and, therefore, husband asked the court to "enforce the Mediated Settlement Agreement by signing a general judgment to be tendered by Husband's counsel." Wife, in her response to the motion, asserted that husband's "filing of this motion on the eve of trial is a blatant and improper attempt to insert confidential settlement negotiations into the court's deliberations."

At the beginning of the trial, the court noted that it was going to rule on the motion for the record, and husband would then present an offer of proof. It then gave its ruling, noting that husband had cited ORS 107.104 in support of the motion:

"First of all, the statute is discretionary. There's three circumstances in which a court may use contract principles to enforce a settlement; that's a stipulate[d] judgment signed [by] both parties, a settlement read onto the record, and a marital settlement agreement incorporated into a judgment. None of these factors exist in this case. No dispute about that, is there?

"* * * * *

---

[3] In his motion, husband outlined what he asserted were the material terms of the parties' agreement:

"1) Spousal support would be awarded to Wife at $4,000 per month indefinitely. Such amount would be deducted from Husband's salary;

"2) Husband would continue to pay his JSAS payment of $319 per month to provide wife with an annuity in the event of his death;

"3) Wife would receive $50,000 in life insurance which would be partitioned off of Husband's present life insurance;

"4) The parties would file a joint tax return for 2010, and Husband would pay tax consequences and receive any tax refund which historically had been de minimus;

"5) Wife would receive the parties' beach house. Husband would pay the beach house taxes through January 1, 2011;

"6) Husband would be awarded the family residence with all encumbrances;

"7) Wife would be allowed to remove her remaining personal effects * * *;

"8) The parties would each be awarded their separate property, IRA's, bank accounts, automobiles, and credit card debts."

"In addition, you allege in your motion that * * * because of the policy in the statute and articulated by our courts to effectuate settlements, mediated agreements—and this one was not reduced to writing, no dispute about that—mediated agreements should be enforced, ignoring one important fact. Judges have authority to finally approve any settlement reached by litigants."

Based on those considerations, the court denied husband's motion to enforce the settlement agreement.

Husband then presented an offer of proof in which he offered testimony from Yates, an attorney who had previously represented wife, that he was present at the mediation sessions in October 2010 and, at their conclusion, understood the parties to have reached an agreement. As part of the offer of proof, husband testified that he had understood an agreement to have been reached with wife. He also specified the terms to which he contended the parties had agreed; the terms that he described were consistent with the terms set forth in the motion. At the close of the offer of proof, the case proceeded without any additional discussion of the motion or the purported settlement agreement.

During the trial, a central issue was how the $14,500 per month payments that husband received as a senior federal judge should be characterized—whether they should be classified as income or as a retirement annuity and, therefore, property that could be divided by court order. Husband took the position that the payments were "a stream of income, a salary, and not a true retirement plan." In wife's view, the stream of payments was a retirement asset, not a salary and the parties' should divide the $14,500 monthly payment evenly. Wife also contended that she should be the beneficiary of a $1 million life insurance policy held by husband; husband disagreed. As to spousal support, husband argued that an award of $4,000 would be "fair. But I obviously leave it to the Court, who has seen many of these cases and knows what a fair after dissolution income stream is."

At the end of the trial, the court announced its rulings. It concluded that

"the $14,500 per month payment is income, not an asset. The survivor benefit is an asset. They are different. I think

they're treated differently, and that is the ruling of this Court, and that's how I will be treating them.

"So this is a long marriage. The disparity of earnings in this marriage is the $14,500 a month. Their other incomes are virtually equal. Based on the parties' ages and relative health, et cetera, it's unlikely that there will be any career changes that are going to result in any significant change in that income, and based on the length of the marriage and the disparity of earnings, this *** is an indefinite maintenance spousal support case.

"And beginning with the month of May, 2011, [husband] will pay $7,000 a month as spousal support. That is deductible by him. That is includable in her income. I'm well aware of that. And not as spousal support, but as a property payment, he will continue the JSAS survivor benefit, which she will continue to have.

"[L]ife insurance of some amount is appropriate. A million dollars is not. [Husband] is under obligation to provide $250,000 of life insurance. What he chooses to do with the rest, whether he chooses to end that policy and buy another one—he probably can't based on his health. How he chooses to do that is his, but $250,000 is the order of this Court."

The court also divided the parties' debts and assets and concluded that there would be no equalizing judgment.

As noted, on appeal from the dissolution judgment, husband raises two assignments of error. Because it is dispositive, we begin by addressing husband's second assignment of error, in which he asserts that the trial court erred in refusing to enforce the agreement he contends was reached at the mediation. In his view, the court should have enforced the agreement and incorporated the terms he asserted were part of that agreement, "including the agreement to award Wife $4,000 per month of spousal support, provide her with $50,000 of life insurance, and file joint state and federal taxes *** into the court's dissolution judgment." Wife, in her response, points out that there was no signed agreement between the parties in this case and that, before the trial court, husband never questioned wife about the alleged agreement, and, therefore, there was no evidence that there had been a meeting of the minds. Furthermore, according to wife, the alleged agreement is not enforceable as a contract

under the provisions of ORS 107.104, and the court had discretion to determine whether to enforce the alleged agreement between the parties and did not abuse its discretion in denying husband's motion.

Pursuant to ORS 107.105(1)(d),

"Whenever the court renders a judgment of marital annulment, dissolution or separation, the court may provide in the judgment:

"* * * * *

"(d)  For spousal support, an amount of money for a period of time as may be just and equitable for one party to contribute to the other, in gross or in installments or both. * * * The court may approve an agreement for the entry of an order for the support of a party."

Thus, as we observed in *Brown and Brown*, 259 Or App 618, 623, 315 P3d 422 (2013), "in setting spousal support, the court has discretion to approve an agreement of the parties for support." Similarly, courts have discretion to approve marital settlement agreements relating to the division of property. *See Pollock and Pollock*, 259 Or App 230, 236, 313 P3d 367 (2013).

Initially, we note that, as both parties appear to agree, the alleged agreement in this case is not directly controlled by the provisions of ORS 107.104. That statute provides, in part:

"(1)  It is the policy of this state:

"(a)  To encourage the settlement of suits for marital annulment, dissolution or separation; and

"(b)  For courts to enforce the terms of settlements described in subsection (2) of this section to the fullest extent possible, except when to do so would violate the law or would clearly contravene public policy.

"(2)  In a suit for marital annulment, dissolution or separation, the court may enforce the terms set forth in a stipulated judgment signed by the parties, a judgment resulting from a settlement on the record or a judgment incorporating a marital settlement agreement:

"(a)  As contract terms using contract remedies;

"(b)  By imposing any remedy available to enforce a judgment, including but not limited to contempt; or

"(c)  By any combination of the provisions of para-graphs (a) and (b) of this subsection."

Thus, the statute "addresses settlements, the terms of which have been incorporated into a judgment. ORS 107.104 pro-vides that such settlements may be enforced through con-tract remedies, or through any other remedy available for the enforcement of a judgment." *Brown*, 259 Or App at 624. Here, as the trial court noted, the alleged agreement does not fit within one of the categories outlined in ORS 107.104(2)—it was not set forth in a stipulated judgment signed by the parties, a judgment resulting from a settle-ment on the record, or a judgment incorporating a marital settlement agreement. Therefore, ORS 107.104(2) does not apply. *See Brown*, 259 Or App at 626 (noting that an agree-ment not incorporated into a judgment is not subject to ORS 107.104(2)); *Pollock*, 259 Or App at 237 n 4 (where a marital settlement agreement had not been reduced to a judgment at the time that the trial court was considering whether to enforce its provisions, ORS 107.104 did not apply).

Nonetheless, even when they are not incorporated into a judgment, marital settlement agreements "enjoy pre-sumptive enforceability." *Brown*, 259 Or App at 627 (cit-ing *Reeves and Elliott*, 237 Or App 126, 129, 238 P3d 427 (2010)). In *Brown*, we described the standard "for evaluat-ing the weight to be assigned a validly executed settlement agreement that has not been incorporated into a stipulated judgment." *Id.* Discussing the Supreme Court's opinion in *Grossman and Grossman*, 338 Or 99, 106 P3d 618 (2005), we explained that

"a trial court is authorized to reject a marital settlement agreement if its enforcement would be inequitable and, instead, to make a just and proper distribution [of prop-erty] based on the court's assessment of all the circum-stances. [However], in view of the policy in favor of settle-ment, in deciding on a division of property, a court should not substitute its own judgment of what is 'just and proper' for the parties' validly executed arm's-length settlement agreement, and should ordinarily accept a settlement

agreement's division of property if it is within the range of just and proper property divisions."

*Brown*, 259 Or App at 626-27 (citations omitted). Similarly, with respect to spousal support, "the court is authorized to make an award of support as may be just and equitable for one party to contribute to another. Just as there is a range of reasonableness for a division of property, there is a range of reasonableness for a just and equitable award of spousal support." *Id.* at 627 (internal quotation marks omitted). Given the presumptive enforceability of all marital settlement agreements, although "a trial court has discretion not to approve an agreement, in light of the strong policy favoring settlements, the court should not substitute its judgment for that of the parties as to an award that is within the range of what is just and equitable." *Id.*

Thus, as explained in *Brown*, where there is a validly executed settlement agreement between the parties, the court must evaluate the terms of that agreement and should enforce them if they are within the range of what is just and equitable under the circumstances. *See also Grossman*, 338 Or at 106 (marital settlement agreements are unenforceable in a dissolution proceeding if they are unfair). Here, there was no executed written agreement between the parties. *Cf. Brown*, 259 Or App at 619-21 (describing a written memorandum of settlement signed by the parties); *Pollock*, 259 Or App at 232-33 (describing parties' signed "handwritten settlement agreement"). Furthermore, the court in this case did not make an express ruling regarding whether a valid settlement agreement between the parties existed, nor can we infer a ruling on that issue from the court's discussion of the motion. *Cf. Brown*, 259 Or App at 620 (trial court found that the parties had "voluntarily and intelligently" entered into settlement agreement "with the full understanding and intent that it would control the division of their property, allocate debts, and establish the amount and duration of spousal support at dissolution"); *Pollock*, 259 Or App at 233 (trial court found that "the parties had negotiated the settlement agreement at arms' length," that "neither party had been coerced or improperly induced to enter the agreement," and that the parties "entered into the mediated settlement agreement freely and voluntarily" (internal quotation

marks omitted)). Instead, the court simply determined that the alleged oral agreement did not fit within the categories described in ORS 107.104 and, noting that it had discretion whether to enforce settlement agreements reached by litigants, denied husband's motion.

Because the trial court did not make any determination regarding the existence of a valid agreement between the parties in the first instance, the court also did not proceed to determine, in the event that there was a valid settlement agreement between the parties, whether the terms of that agreement were within the range of what was just and equitable and should, therefore, be enforced. Because the court failed to make those necessary determinations, we conclude that it is appropriate to remand the case to the trial court. On remand, the court should determine whether there was an agreement and, if so, reconsider the spousal support and life insurance awards in light of the agreement.[4]

Spousal support and life insurance awards vacated and remanded for reconsideration; otherwise affirmed.

---

[4] In the event the court determines that there was no valid agreement between the parties, we note that the trial court determined that an award to wife of maintenance spousal support of $7,000 per month was just and equitable. In his first assignment of error in this case, husband asserts that that award "is unreasonably disproportionate, and therefore is unjust and inequitable." On review for abuse of discretion, a trial court's spousal support award "will be upheld if, given the findings of the trial court that are supported by the record, the court's determination that an award of support is 'just and equitable' represents a choice among legally correct alternatives." *Berg and Berg*, 250 Or App 1, 2, 279 P3d 286 (2012). Here, pursuant to ORS 107.105(1)(d)(C), the court found that the parties had a long-term marriage of 27 years and a disparity of income of approximately $14,500 per month based on husband's gross monthly income of $17,734 and wife's gross monthly income of $2,965. It observed that husband was a senior federal judge while wife was a retired school principal, substitute teacher, and children's book author and, given their ages and relative health (which had been an issue for each of them in the past), their incomes were unlikely to change. Taking into account those facts along with the financial needs and resources of each party, and observing that the "tax consequences to each party are that Wife will report spousal support she receives as income for tax purposes and Husband will report the spousal support he pays as a deduction," the court concluded that it was just and equitable for wife to receive $7,000 per month in indefinite maintenance support. We would not conclude that that determination was an abuse of discretion under the circumstances of this case.