No. 29          July 30, 2015          575

IN THE SUPREME COURT OF THE
STATE OF OREGON

In the Matter of the Marriage of

Patricia POLLOCK,
*Petitioner on Review,*
*and*

William Lawrence POLLOCK,
*Respondent on Review.*

(CC D008-0256; CA A147846; SC S062000)

En Banc

On review from the Court of Appeals.*

Argued and submitted September 16, 2014.

David N. Hobson, Jr., Hobson and Associates, LLC, Aloha, argued the cause and filed the briefs for petitioner on review.

Helen C. Tompkins, Law Office of Helen C. Tompkins, PC, Lake Oswego, argued the cause and filed the brief for respondent on review.

BREWER, J.

The decision of the Court of Appeals is reversed in part and otherwise vacated. The general judgment and the supplemental judgment are reversed, and the case is remanded to the circuit court for further proceedings.

_____
    * Appeal from Yamhill County Circuit Court, Carroll J. Tichenor, Judge. 259 Or App 230, 313 P3d 367 (2013).

**BREWER, J.**

The issue in this case is whether discovery of the parties' assets must be provided in a marital dissolution action after the parties have entered into a settlement agreement but before the trial court has ruled on a contested motion to enforce the agreement. As explained below, we conclude that the trial court in this case did not satisfy its duty under ORS 107.105(1)(f)(F) to ensure that the parties had fully disclosed their assets before it decided husband's motion to enforce a mediated agreement and entered a judgment of dissolution based on that decision. Accordingly, we reverse the portion of the decision of the Court of Appeals that upheld the trial court's discovery ruling, vacate the remainder of the Court of Appeals' decision, and reverse the judgment of dissolution and remand to the circuit court for further proceedings.

## I. FACTS AND OTHER BACKGROUND

We take the relevant facts from the Court of Appeals' decision and the record. The parties were married in 2001 after signing a premarital agreement providing that, in the event of a marital dissolution, each party would receive his or her separate property as listed in an attached schedule. In May 2008, wife filed a petition for dissolution of the marriage. Wife contested the validity of the premarital agreement, but the trial court concluded that it was enforceable and entered a limited judgment to that effect. Wife did not appeal from that judgment.

Wife first filed a request for production of documents several months after she initiated the dissolution action. After the trial court upheld the premarital agreement, wife's counsel continued to request discovery related to husband's separate property that was excluded from division under the premarital agreement. In a letter to husband's attorney, wife's counsel stated, "If we can reach some understanding with regards to [our discovery requests and another matter], then we are more than willing to mediate." Husband's counsel eventually sought a protective order to limit disclosure related to husband's separate assets. The trial court did not directly rule on the motion for a protective

order, or on wife's request for production, but instead set "parameters" on the discovery. The court indicated that, in light of the premarital agreement, it would permit discovery of certain of husband's separate property, but explicitly deferred ruling on the discovery issues to afford the parties an opportunity to settle the case. Husband's counsel subsequently produced a substantial amount of the requested discovery materials, including some materials relating to assets excluded from division under the premarital agreement, but withheld certain other materials on the ground that they were not relevant in light of the terms of the premarital agreement.

Eventually, the parties agreed to mediate their dispute concerning the division of their marital assets and other financial issues not covered by the premarital agreement. Both parties were represented by counsel in the mediation process, which was conducted by a private mediator. At the conclusion of the mediation, they signed a handwritten settlement agreement (the mediated agreement) that purported to "resolve[] all claims between the parties." Among other provisions, the mediated agreement divided their marital assets between them and provided for a spousal support award to wife. The mediated agreement also provided that husband would receive "all accounts in his name." The parties did not place their settlement on the record in open court. Nor did the mediated agreement indicate whether the parties had fully disclosed their assets to each other or, if not, why further disclosure was unnecessary.

Based on the mediated agreement, husband proposed a "Stipulated General Judgment of Dissolution of Marriage," which he forwarded to wife. After some disagreement between the parties over the terms, husband eventually submitted a proposed judgment to the trial court. Wife objected to the proposed judgment, arguing that the mediated agreement should not be enforced. Wife asserted that she had signed the agreement under duress that was the product of various actions of her previous attorney (who had been replaced) and the side effects of recent surgery. Wife also contended that the property division provided in the mediated agreement was not just and proper.

Thereafter, husband filed a motion to enforce the mediated agreement. Before the trial court held a hearing on that motion, wife filed a new request for production of documents, and, after husband declined to provide certain documents pertaining to his separate property, wife filed a motion to compel production. The trial court deferred ruling on wife's motion to compel production. The court stated that it would not order wife's requested discovery in the event that it determined that the mediated agreement was enforceable; if it were to conclude that the agreement was not enforceable, the court stated, it would revisit wife's motion to compel production.

In August 2010, after a two-day hearing on husband's motion to enforce the mediated agreement, the trial court issued a letter opinion that included a detailed valuation of the parties' marital assets and numerous specific findings of fact and conclusions of law. The court determined, among other things, that neither party had been coerced or improperly induced to enter the agreement; that "[wife] and [husband] entered into the mediated settlement agreement freely and voluntarily"; and that the agreement did not "violate the law or contravene public policy."

The trial court nevertheless made an "adjustment" to the mediated agreement by ordering husband to pay wife an additional $300,000. The adjustment involved a loan of approximately $300,000 that husband had made to a Ms. Baldocci.[1] In its letter opinion, the court made two determinations explaining the adjustment. The court first stated:

> "The Court specifically finds that the mediated settlement agreement without the distribution of the marital asset of the loan to *** Baldocci, with the values of the property adjusted as discussed above, is within the range of possible

---

[1] As explained below, the trial court apparently believed that the Baldocci loan was a marital asset that had not been allocated in the mediated agreement. Wife acknowledged at the August hearing that she had learned—before the mediation—that husband had advanced funds to Baldocci and also that she had known that the funds were withdrawn from husband's separate bank account. Wife stated that she had not known the precise amount of the loan before the mediation, but that she had learned that husband had advanced funds to Baldocci when, in the course of reviewing discovery, she saw checks from husband to Baldocci.

property divisions that are just and proper in all of the circumstances of this case."

Immediately following that statement, the court concluded:

"The Court further finds that with the adjustment of the mediated settlement agreement with the award of the loan to *** Baldocci to [wife] continues the settlement agreement to be within the range of possible property divisions that are just and proper."

In the wake of the trial court's ruling, confusion arose between the parties as to the trial court's reasoning with respect to the Baldocci loan. In an effort to resolve that confusion, the trial court explained at a later hearing that it had considered it inequitable for husband to draw down on a line of credit against the parties' residence—that was distributed to wife in the mediated agreement—and then reduce the amount of spousal support that he owed to wife under the mediated agreement by amounts that he had paid on the line of credit. In an effort to rectify that perceived inequity, the court explained that it had turned to the Baldocci loan, which apparently had nothing to do with the line of credit beyond the fact that its outstanding balance of $300,000 approximated the amount that husband had withdrawn on the line of credit. Because, as the trial court further explained, it believed that the Baldocci loan was a marital asset that had not been allocated by the mediated agreement, the court had awarded that loan to wife.[2]

Husband appealed the ensuing dissolution judgment, contending, among other arguments, that the terms of the mediated agreement should control the division of the parties' marital property and that the trial court had erred in adjusting the property division. Wife cross-appealed,

---

[2] In a later ruling, the trial court further explained that it had "found that the mediated agreement was appropriate and enforceable and [wife's] objection thereto was not reasonable under the circumstances." However, "despite [that] finding," the court further found that "[husband] should [not] be allowed to profit from his own misconduct, and thus [wife] was awarded an additional amount in the form of [the Baldocci note]." In a nutshell, the trial court gave two different explanations for the adjustment: (1) the Baldocci loan was an omitted asset that must be included in the division of marital assets; and (2) the Baldocci loan was awarded to wife as a set-off against what the court perceived to be husband's inequitable conduct with respect to the line of credit.

arguing, as pertinent here, that the trial court had erred in failing to rule on and grant her discovery motion. Wife sought to have the dissolution judgment set aside and to have the case remanded for a trial.

Before the Court of Appeals, husband contended that, in light of the fact that the trial court had determined that the property division it effected was just and proper in its original form, the court had erred by modifying the mediated agreement. The Court of Appeals rejected that argument, ruling that the trial court, in fact, had not determined that the division of property was just and proper. *Pollock and Pollock*, 259 Or App 230, 236, 313 P3d 367 (2013). The Court of Appeals further concluded that the trial court had erred in determining that the mediated agreement did not, by its terms, provide for a distribution of the balance owing on the Baldocci loan—a determination that was integral to the trial court's rationale for awarding the loan to wife. *Id.* at 237-38. The Court of Appeals concluded instead that, because the agreement provided that husband would receive all accounts in his name, and because the funds loaned to Baldocci had been withdrawn from one of husband's separate accounts, the agreement in fact awarded the loan to husband. As a consequence, the Court of Appeals agreed with husband's argument that the trial court had erred in awarding the Baldocci loan to wife. *Id.* at 238. Because the Court of Appeals understood that wife "does not dispute husband's assertion that there was no evidence indicating that the Baldocci loan came from anywhere other than husband's separate account," the court concluded that

> "[t]he trial court's interpretation—and corresponding 'adjustment'—of the agreement was flawed as a matter of law; under the terms of the settlement agreement, husband alone was entitled to repayment on the Baldocci loan."

*Id.* at 238.

Because it believed that there had been no determination that the mediated agreement—as properly interpreted—effected a "just and proper" division of the parties' divisible property under ORS 107.105(1)(f), the

Court of Appeals remanded the case to the trial court to make that determination in the first instance.[3] *Id.*

The Court of Appeals thereafter turned to wife's cross-appeal which, as noted above, challenged the trial court's discovery ruling. Wife argued that the trial court's ruling—more precisely, its failure to rule on and grant her motion to compel production before deciding whether to enforce the mediated agreement—improperly prevented her from investigating, and presenting evidence of, husband's separate assets and resulted in a settlement that was not just and proper in all the circumstances under ORS 107.105(1)(f). Wife reasoned that all the relevant circumstances, in particular, the nature and extent of husband's separate assets, were not before the court at the hearing on the motion to enforce the mediated agreement. Wife asserted that two statutes, ORS 107.105(1)(f)(F),[4] and ORS 107.089,[5]

---

[3] The Court of Appeals nevertheless proceeded to address an issue that it thought was likely to arise on remand, namely, whether husband actually had engaged in inequitable conduct with respect to the line of credit. *Pollock*, 259 Or App at 238-39. The court opined that, as a matter of law, husband had not engaged in inequitable conduct. *Id.* at 239. Because, as explained below, we vacate the Court of Appeals' decision, we express no opinion as to the correctness of the Court of Appeals' discussion of that issue or the other grounds for its disposition of husband's appeal. Suffice it to say that it is not obvious why, if the Court of Appeals were correct in determining that husband had not engaged in misconduct, there was any reason to remand the case to the trial court to make a determination of whether the mediated agreement was enforceable. As noted, the trial court ultimately explained that, except for its determinations that husband had engaged in misconduct with respect to the line of credit and that the Baldocci loan was an omitted asset, it had rejected wife's challenge to the property division provided by the mediated agreement.

[4] ORS 107.105 provides, in part:

"(1) Whenever the court renders a judgment of marital annulment, dissolution or separation, the court may provide in the judgment:

"* * * * *

"(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. In determining the division of property under this paragraph, the following apply:

"* * * * *

"(F) The court shall require full disclosure of all assets by the parties in arriving at a just property division."

[5] ORS 107.089 states, in relevant part:

"(1) If served with a copy of this section as provided in ORS 107.088, each party in a suit for legal separation or for dissolution shall provide to the other party copies of the following documents in their possession or control:

required the court to compel production of the documents that she sought.

　　The Court of Appeals disagreed. With respect to ORS 107.089, the court concluded that wife had waived her right to invoke that statute, because her "discovery requests were pending before the trial court [when] she voluntarily signed the settlement agreement, which *** purported to 'resolve[] all claims between the parties.'" *Pollock*, 259 Or App at 243. According to the Court of Appeals:

"To the extent that wife did not have as full a view of husband's separate assets as she wished at the mediation, she

---

"(a) All federal and state income tax returns filed by either party for the last three calendar years.

"(b) If income tax returns for the last calendar year have not been filed, all W-2 statements, year-end payroll statements, interest and dividend statements and all other records of income earned or received by either party during the last calendar year.

"(c) All records showing any income earned or received by either party for the current calendar year.

"(d) All financial statements, statements of net worth and credit card and loan applications prepared by or for either party during the last two calendar years.

"(e) All documents such as deeds, real estate contracts, appraisals and most recent statements of assessed value relating to real property in which either party has any interest.

"(f) All documents showing debts of either party, including the most recent statement of any loan, credit line or charge card balance due.

"(g)(A) Certificates of title or registrations of all automobiles, motor vehicles, boats or other personal property registered in either party's name or in which either party has any interest.

"(B) For all automobiles, motor vehicles and boats described in subparagraph (A) of this paragraph, documentation evidencing the vehicle identification number or other unique identifying number.

"(h) Documents showing stocks, bonds, secured notes, mutual funds and other investments in which either party has any interest.

"(i) The most recent statement describing any retirement plan, IRA pension plan, profit-sharing plan, stock option plan or deferred compensation plan in which either party has any interest.

"(j) All financial institution or brokerage account records on any account in which either party has had any interest or signing privileges in the past year, whether or not the account is currently open or closed.

"*****

"(5) The provisions of this section do not limit in any way the discovery provisions of the Oregon Rules of Civil Procedure or any other discovery provision of Oregon law."

relinquished any right to conduct a more thorough inquiry by signing that agreement. Husband's counsel provided a substantial amount of information before the mediation, while simultaneously refusing to turn over other requested items. At that point, wife could have refused to settle and persisted in her discovery requests. She chose to settle, and she did so while apparently content with knowing what discovery materials she wanted but did not have."

*Id.*

The Court of Appeals also rejected wife's argument based on ORS 107.105(1)(f)(F), reasoning that "a trial court may presume that parties who have reached a settlement agreement after an arm's length negotiation have already sufficiently considered the nature and extent of each other's holdings." *Id.* at 244. For that proposition, the court relied on a policy favoring settlements expressed in ORS 107.104 (set out below), 357 Or at 589, and this court's decision in *McDonnal and McDonnal*, 293 Or 772, 779, 652 P2d 1247 (1982), which we discuss in some detail below. The court ultimately concluded that ORS 107.105(1)(f)(F) "does not impose a requirement on trial courts to compel complete discovery in order to permit one party to reexamine the circumstances underlying a voluntary settlement agreement." *Pollock*, 259 Or App at 246. Accordingly, the Court of Appeals affirmed on wife's cross-appeal.

## II. ANALYSIS

### A. *Decisional Framework on Review*

Wife did not seek review of the Court of Appeals decision on husband's appeal. Accordingly, it is not necessary for us to consider whether the trial court's "adjustment" of the division of assets in the mediated agreement was within the scope of its authority in deciding husband's motion to enforce that agreement, or whether, if the trial court had such authority, its decision to do so was supported by the evidence in the record.[6] For the same reason, we do not consider

---

[6] Generally speaking, a contested motion to enforce a dissolution settlement agreement presents a binary choice to the trial court: enforce the agreement or not. To enforce the agreement subject to an adjustment that the trial court deems just and proper arguably is tantamount to denying enforcement of the agreement

whether the Court of Appeals correctly resolved husband's objections to the adjustment that the trial court made.

That said, wife's challenge to the trial court's discovery ruling and the Court of Appeals decision affirming that ruling will, if successful, require a remand to the trial court to reconsider that ruling without regard to its decision on the merits of husband's motion to enforce the mediated agreement. Accordingly, despite wife's failure to challenge the Court of Appeals' decision on husband's appeal, a reversal and remand on wife's cross-appeal would result in a reversal of the judgment of dissolution embodying the trial court's decision on the merits of husband's motion to enforce the mediated agreement, as well as the vacation of the Court of Appeals decision remanding the case to the trial court on husband's appeal. With that preface, we turn to wife's cross-appeal.

B. *Prejudgment Discovery in the Wake of a Mediated Agreement—the Role of ORS 107.105(1)(f)(F)*

In her motion to compel production of documents, wife sought discovery regarding husband's separate assets under the premarital agreement. Husband previously had objected to the production of much of that material and, in his response to the motion to compel production, husband renewed that objection. As noted, the trial court deferred ruling on the motion to compel production pending its resolution of husband's motion to enforce the mediated agreement. In a memorandum opposing husband's motion to enforce the agreement, wife argued that she was entitled to discovery concerning husband's separate property on the ground that, because the agreement did not award her a larger share of the parties' marital assets, it did not effect a just and proper division of that property. The question is whether, by deferring its ruling on the motion to compel production, the trial court erroneously deprived wife of discovery that was relevant to her objections to enforcement of the mediated agreement.

There are multiple statutory provisions relating to discovery in an action for dissolution of marriage. Two of

---

as written and trying the case on its merits. One thing about which the parties agree is that the hearing on the motion to enforce the mediated agreement was neither scheduled nor postured as a trial on the merits.

those provisions are at issue here, although it is only necessary to discuss one in detail.[7] Without limiting "in any way the discovery provisions of the Oregon Rules of Civil Procedure or any other discovery provision of Oregon law," ORS 107.089 entitles a party to a dissolution action to receive discovery of a number of particular types of documents. We detain ourselves only briefly with that provision because, although wife generally relies on it, she has not shown that husband has withheld any of the types of documents that are subject to that provision. Accordingly, we do not consider its application here, nor do we consider whether the Court of Appeals erred in concluding that, by entering into the mediated agreement, wife waived her right to further discovery under that provision.

That brings us to ORS 107.105(1)(f)(F), which, as noted, provides:

"(1)  Whenever the court renders a judgment of marital annulment, dissolution or separation, the court may provide in the judgment:

"* * * * *

"(f)  For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. In determining the division of property under this paragraph, the following apply:

"* * * * *

"(F)  The court shall require full disclosure of all assets by the parties in arriving at a just property division."

Although the legislature did not define the phrase "full disclosure of all assets," in ordinary terms, "full

_____

[7] ORCP 43 and ORCP 46 generally govern the production of documents in civil actions, including dissolution actions. Under ORCP 43 A, a party may serve on any other party a request to produce and permit the party making the request to inspect and copy any designated documents that "contain matters within the scope of Rule 36 B." ORCP 36 B(1) provides that a party "may inquire regarding any matter, not privileged, which is relevant to the claim or defense" of any party. ORCP 43 B(1) requires that the request "identify any items requested for inspection, copying, or related acts by individual item or by category described with reasonable particularity." ORCP 46 A provides in relevant part, that "[a] party *** may apply for an order compelling discovery." Because wife does not rely on the discovery provisions of the Oregon Rules of Civil Procedure, we do not discuss them further.

disclosure" in a dissolution action requires disclosure of the existence of all assets of the parties, as well as disclosure of the value of those assets. *See, e.g.*, *In re Murphy*, 10 Ohio App 3d 134, 135-37, 461 NE2d 910, 912-13, 915 (1983) (so holding). That meaning does not appear to be in dispute in this case. What is in dispute is whether subsection (1)(f)(F) requires "full disclosure of all assets by the parties" before the trial court determines whether a settlement agreement that the parties previously have entered into should be enforced. On its surface, the text of the provision appears to be broad enough to apply in such circumstances. Moreover, nothing in the immediate statutory context or legislative history of the provision contradicts that tentative text-based interpretation.[8]

---

[8] ORS 107.105(1)(f)(F) originated in House Bill (HB) 2471 (1977), which became Oregon Laws 1977, chapter 847, section 2. As codified, the amendment added the last three sentences to what was then ORS 107.105(1)(e):

"(e) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. *The court shall view the contribution of a spouse as a homemaker in the contribution of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage. The court shall require full disclosure of all assets by the parties in arriving at a just property division.*"

(Emphasis added.)

The amendment resulted from a resolution of the Oregon Women's Political Caucus Convention recommending that the role of a homemaker spouse be recognized as an economically valuable contribution to the acquisition of assets during marriage. *See Engle and Engle*, 293 Or 207, 213-14, 646 P2d 20 (1982). The end result of the 1977 amendments was the addition of three sentences following the first sentence of ORS 107.105(1)(e). As set out above, the first sentence required the court to "view the contribution of a spouse as a homemaker in the contribution of marital assets." The second added sentence provided for a rebuttable presumption "that both spouses have contributed equally to the acquisition of property during the marriage." The third sentence added the full disclosure requirement.

None of the legislative history of HB 2471 explains the specific purpose underlying the full disclosure requirement, including how it was meant to supplement or reinforce existing discovery requirements in dissolution cases. The focus of legislative hearings, rather, was on the homemaker spouse and rebuttable presumption provisions. For example, during a House Judiciary Committee hearing on May 9, 1977, members discussed the purpose of the bill, but not the "full disclosure" requirement specifically. In response to a question, Representative Lombard stated that the proposed amendment to subsection (e) would state the policy that the domestic contribution of spouses is to be considered in the division of marital assets. Tape Recording, House Committee on judiciary, HB 2471, May 9, 1977, Tape 49, Side 1 (statement of Rep Kip Lombard). Later, the committee discussed whether the domestic contribution should be presumed to be half and whether that presumption should be rebuttable. Before the Senate

As noted, the Court of Appeals reached a different conclusion. In affirming the trial court's decision to defer ruling on wife's discovery motion, the Court of Appeals assumed that there might be circumstances in which a trial court could order discovery under subsection (1)(f)(F) while a motion to enforce a settlement agreement was pending. *Pollock*, 259 Or App at 246. However, relying on the proposition that "Oregon law affords wide latitude to parties in crafting settlement agreements," together with "this state's policy of favoring settlement agreements," the Court of Appeals concluded that "the asset disclosure provision of ORS 107.105(1)(f)(F) does not impose a requirement on trial courts to compel complete discovery in order to permit one party to reexamine the circumstances underlying a voluntary settlement agreement." *Id*. at 245-46. Whether that conclusion is correct is the ultimate issue on review.

Before addressing that issue, though, we note that an unstated premise underlying wife's position is that the discovery she sought was relevant to the trial court's decision whether to enforce the mediated agreement. In deferring its ruling on wife's discovery motion, the trial court apparently assumed that the disputed documents were not relevant to its decision. For wife's argument to be correct, the trial court must have been mistaken in that understanding. Accordingly, we first briefly consider that issue.

In determining whether the disputed documents were relevant, we confine ourselves to wife's argument that she was prevented from developing the record before the trial court on husband's motion to enforce the mediated agreement because she was not afforded discovery that was relevant to her objection that the property division effected by the mediated agreement was not just and proper.[9] The

---

Judiciary Committee on June 17, 1977, Representative Frohnmayer said that the bill attempted to make sure that the courts had before them the full range of considerations that ought to come into play in the division of property. Tape Recording, Senate Committee on Judiciary, HB 2471, June 17, 1977, Tape 45, Side 2 (statement of Rep David Frohnmayer).

[9] Wife does not assert that any of the documents that husband declined to produce were relevant to her duress defense to enforcement of the mediated agreement. Nor does she challenge on appeal the trial court's finding of fact that she was not under duress when she executed the agreement. Accordingly, we do not consider that issue further.

viability of that argument depends in part on whether the trial court had authority, in deciding whether to enforce the agreement, to consider the value of husband's separate property that was insulated from division by the limited judgment upholding the parties' premarital agreement.

Husband appears to believe that the trial court lacked such authority. In particular, he argues that, because the trial court previously had upheld the premarital agreement, "discovery was limited to joint assets or to wife's separate property used to pay joint debts or to increase husband's separate property." Apart from his generalized argument that the nature and value of his premarital property was not relevant because the trial court previously had upheld the premarital agreement, husband offers no explanation why the trial court lacked such authority.[10] That omission is understandable because our prior decisions establish that a trial court has discretion to make an unequal division of marital assets if to do so would be just and proper in all the circumstances. *Kunze and Kunze*, 337 Or 122, 135, 92 P3d 100 (2004). That equitable determination "takes into account the social and financial objectives of the dissolution, as well as any other considerations that bear upon the question of what division of the marital property is equitable." *Id*.

It follows—contrary to husband's view—that evidence of the existence and value of the separate property allocated to husband under the premarital agreement was relevant to the determination whether the mediated agreement effected a just and proper division of the parties' marital assets. However, that preliminary conclusion does not, by itself, necessarily mean that wife was entitled to conduct further discovery concerning those assets. That determination depends, in addition, on whether the requirement of full disclosure under ORS 107.105(1)(f)(F) remained in force after the parties executed the mediated agreement. We now turn to that issue.

---

[10] Nor does any provision of the premarital agreement indicate that the trial court could not take the allocation of husband's separate property into account in dividing the parties' marital assets. The only salient reference to marital assets in the premarital agreement is in paragraph 16 B, which provides that, in the event of a future dissolution of the parties' marriage, "co-owned" property shall be divided as the parties' "interests may appear."

As discussed, the Court of Appeals concluded that the full disclosure requirement had, at most, a limited application after the parties executed the mediated agreement. The Court of Appeals largely based that conclusion on the policy favoring settlements codified in ORS 107.104 and expressed in this court's decision in *McDonnal*. To evaluate that conclusion, we first examine ORS 107.104, which provides:

"(1)   It is the policy of this state:

"(a)   To encourage the settlement of suits for marital annulment, dissolution or separation; and

"(b)   For courts to enforce the terms of settlements described in subsection (2) of this section to the fullest extent possible, except when to do so would violate the law or would clearly contravene public policy.

"(2)   In a suit for marital annulment, dissolution or separation, the court may enforce the terms set forth in a stipulated judgment signed by the parties, a judgment resulting from a settlement on the record or a judgment incorporating a marital settlement agreement:

"(a)   As contract terms using contract remedies;

"(b)   By imposing any remedy available to enforce a judgment, including but not limited to contempt; or

"(c)   By any combination of the provisions of paragraphs (a) and (b) of this subsection.

"(3)   A party may seek to enforce an agreement and obtain remedies described in subsection (2) of this section by filing a motion, serving notice on the other party in the manner provided by ORCP 7 and, if a remedy under subsection (2)(b) of this section is sought, complying with the statutory requirements for that remedy. All claims for relief arising out of the same acts or omissions must be joined in the same proceeding."

The Court of Appeals correctly noted that ORS 107.104(1)(b) addresses settlement agreements that, unlike the agreement at issue here, have been incorporated into a judgment. The Court of Appeals also was correct in concluding that the general policy favoring the settlement of dissolution actions set out in ORS 107.104(1)(a) is not, by its

terms, limited in scope to settlements that have been incorporated into judgments. However, that policy does not necessarily impose a contextual limitation on the scope or reach of ORS 107.105(1)(f)(F). Instead, whether the full disclosure requirement is implicated when a party objects to enforcement of a marital settlement agreement is informed by the nature of the trial court's role in determining whether to enforce such agreements, a matter that this court took up in *McDonnal*.

In *McDonnal*, which preceded the enactment of ORS 107.104, this court addressed the role of marital settlement agreements in the determination of a just and equitable spousal support award under ORS 107.105 (1981). In that case, a marital settlement agreement that was incorporated into a dissolution judgment provided for a review of spousal support "at the expiration of three years" without a showing of a change in circumstances. *McDonnal*, 293 Or at 775. Similar to today's version, ORS 107.105(1) (1981) prescribed a list of factors that the court should consider in making a spousal support award. Also similar to today's version, ORS 107.105(1)(c) (1981) further provided that "[t]he court may approve, ratify and decree voluntary property settlement agreements providing for contribution to the support of a party." This court explained in *McDonnal* that, under ORS 107.105 (1981), "agreements made in anticipation of a dissolution are generally enforceable and accepted by the court when they are equitable given the circumstances of the case." *Id.* at 778 (citations omitted). The court further observed that a settlement agreement has additional significance after it has been approved by the court and incorporated into the dissolution judgment. In that circumstance, the court said, the agreement is to be enforced "as a matter of public policy." *Id.* at 779. This court has since stated that *McDonnal* is consistent with the policies set out in ORS 107.104. *Matar and Harake*, 353 Or 446, 457, 300 P3d 144 (2013).

Twenty years after *McDonnal*, this court in *Grossman and Grossman*, 338 Or 99, 106 P3d 618 (2005), examined the nature of a trial court's enforcement role in the context of an agreement relating to the division of marital property in anticipation of separation that had not

been incorporated into a stipulated judgment. On the one hand, the court said, under ORS 107.105(1), a trial court has authority to reject a marital settlement agreement if its enforcement would be inequitable and, instead, to make a just and proper distribution of property, after a trial, based on the court's assessment of all the circumstances. *Id.* at 107. On the other hand, the court said, in view of the policy favoring settlements, a trial court ordinarily should accept a settlement agreement's division of property if it is within the range of just and proper property divisions. *Id.* at 106-07. Of particular importance to this court in *Grossman* was the discretionary nature of a trial court's task in effecting a just and proper division of property. In that regard, the court noted that "in many cases a range of possible property divisions likely would be just and proper." *Id.* at 107.

In sum, this court's decisions before and after the enactment of ORS 107.104 establish that, despite the general policy favoring settlements, a trial court's role in deciding whether to enforce a prejudgment marital settlement agreement is not merely to approve the parties' voluntary act. *See, e.g.*, *Norris and Norris*, 302 Or 123, 126, 727 P2d 115 (1986) ("Application [of the just and proper standard in ORS 107.105(1)(f)] is ultimately the duty of the court, not of the parties.").[11] Although a trial court should not substitute its judgment by rejecting a settlement that falls within the range of what is just and proper, the court has the ultimate authority to arrive at a just and proper property division by determining whether a settlement falls within that range. *See Grossman*, 338 Or at 107; *McDonnal*, 293 Or at 778.

So understood, nothing about the policy favoring settlements that is codified in ORS 107.104 or expressed in this court's prior decisions renders the "full disclosure" requirement of ORS 107.105(1)(f)(F) inapplicable in the

---

[11] In support of its contrary view of the cases, the Court of Appeals in this case pointed to this court's statement in *McDonnal* that "[w]e do not read [ORS 107.105(1)(e) (1981)] to require the court to apply an analysis of the statutory factors to the circumstances of each case when confronted with a proposed agreement." *Pollock*, 259 Or App at 245 (quoting *McDonnal*, 293 Or at 778). In making that statement, though, this court was referring to the substantive considerations that a court would be required to consider in arriving at a spousal support award itself; that statement did not address the issue of what discovery a party is entitled to receive in aid of an objection to enforcement of a settlement agreement.

context of a prejudgment motion to enforce a settlement agreement. In that setting, the parties are entitled to discovery under ORS 107.105(1)(f)(F) that is relevant to the issue of whether the division of marital assets effected by the agreement is within a range that is just and proper in all the circumstances. It is through that lens that the trial court was required to consider wife's motion to compel production in this case. In postponing a ruling on that motion until after it decided husband's motion to enforce the mediated agreement, the trial court failed to recognize that the full disclosure requirement applied to the inquiry before it.

Husband remonstrates that, by agreeing to resolve "all claims between the parties," wife "waived" any right to further discovery pertaining to husband's separate assets. We disagree. Although the Court of Appeals relied on that provision of the mediated agreement in concluding that wife had waived any right to further discovery under ORS 107.089, that court recognized that husband's waiver argument did not foreclose wife's reliance on ORS 107.105(1)(f)(F). *See Pollock*, 259 Or App at 244 (observing that the "fact that wife waived her right to discovery under ORS 107.089 does not end the inquiry"). In making that distinction, the Court of Appeals correctly recognized that ORS 107.105(1)(f)(F) imposes a mandate on courts (not parties) to require full disclosure of the parties' assets in making a just property division. The trial court's duty under that statute was not a "claim" that the parties settled by signing the mediated agreement in this case, and we do not understand husband to make any developed argument to that effect. *Cf.* ORCP 18 (describing "claims" in terms of the "relief" that a party demands in a civil action). To the contrary, to conclude that the trial court's duty under ORS 107.105(1)(f)(F) was discharged merely because the parties had entered into a mediated settlement agreement that purported to resolve their claims would be irreconcilable with the terms of the statute. Instead, that statutory duty endured until the court entered a dissolution judgment that effected a just division of the parties' assets.[12] In short, before deciding whether the

_____

[12] This case presents no occasion to decide what result would obtain if the mediated agreement expressly had purported to settle all discovery disputes between the parties. We note, however, that the answer might depend in part on

mediated agreement should be enforced, the trial court was obligated to decide wife's motion to compel production under the standard prescribed by ORS 107.105(1)(F). In failing to do so, the court erred.[13]

We hasten to add that we need not—and do not—determine to what extent the trial court was required to grant wife's motion to compel production. That is, we do not decide here whether wife was entitled to any particular documents. One of the challenges presented by the record in this case is that the parties seem to disagree as to which documents wife already has received. Moreover, in her motion to compel production, wife included broad-ranging requests that may or may not be necessary to satisfy the statutory requirement of full disclosure in the present setting. Two things are clear, however: (1) wife already has received considerable discovery; and (2) husband has withheld certain additional records pertaining to his separately held assets that may be relevant to the determination of whether the mediated agreement produced a just and proper division of the parties' marital assets. It is the task of the trial court on remand to determine whether and the extent to which husband has failed to provide full disclosure of his assets in the broader context of the parties' dispute as to whether the mediated agreement produced a just and proper award.

Finally, nothing in this opinion should be construed as a retreat from this court's emphasis in prior decisions on the importance of the policy encouraging dissolution

---

the ground for the objection to enforcement of the agreement. Where, for example, an objection is based on an assertion of inequitable conduct (such as the concealment of assets or their value) by the party resisting discovery, it is difficult to imagine that such a provision would discharge the trial court's duty to require full disclosure. Where, on the other hand, an objection is based solely on a theory that a mediated property division is "unjust" and that its unjustness could be shown by requiring further discovery, such a provision would be germane to the trial court's determination whether the full disclosure requirement already had been satisfied. As explained below, 357 Or at 594, 594 n 14, careful practitioners generally should provide in a settlement agreement that the parties have made full disclosure of all their assets and that each is satisfied with the information provided.

[13] Husband also appeals from a supplemental judgment denying his petition for attorney fees and costs. Because we reverse and remand the judgment of dissolution, we also reverse and remand the supplemental judgment for further consideration by the trial court.

settlement agreements. Dissolution actions should be resolved expeditiously and at reasonable expense. When parties undertake to settle such actions, two precautions that were not taken here can help ensure the earliest principled finality: (1) placing the terms of the settlement on the record in open court, *see* ORS 107.104(1)(b) (providing that it is the policy of this state to "enforce the terms [of a judgment resulting from a settlement on the record] to the fullest extent possible, except when to do so would violate the law or would clearly contravene public policy"); and (2) expressly providing in the agreement and on the record that full disclosure of the parties' assets has been made and that the parties are satisfied with the information provided,[14] or, if not, why the settlement nevertheless is just and proper in the circumstances.

The decision of the Court of Appeals is reversed in part and otherwise vacated. The general judgment and the supplemental judgment are reversed, and the case is remanded to the circuit court for further proceedings.

---

[14] Such provisions are commonly included in marital settlement agreements. *See, e.g.*, *Prime v. Prime*, 172 Or 34, 38, 139 P2d 550 (1943); *Moon v. Moon*, 140 Or App 402, 404, 914 P2d 1133 (1996).